# United States Court of Appeals for the Federal Circuit

06-1043, -1092, -1141

ELKEM METALS COMPANY
and GLOBE METALLURGICAL, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Cross Appellant,

and

RIMA INDUSTRIAL S/A,

Defendant-Cross Appellant.

Clifford E. Stevens, Jr., DLA Piper Rudnick Gray Cary US LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were William D. Kramer and Martin Schaefermeier.

Reginald T. Blades, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-cross appellant United States. With him on the brief were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief was Quentin M. Baird, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC. Of counsel were Berniece A. Browne and John D. McInerney, Attorneys. Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Rosa S. Jeong, Greenberg Traurig, LLP, of Washington, DC, argued for defendant-cross appellant Rima Industrial S/A. With her on the brief was Philippe M. Bruno.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

06-1043, -1092, -1141


ELKEM METALS COMPANY
and GLOBE METALLURGICAL, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Cross Appellant,

and

RIMA INDUSTRIAL S/A,

Defendant-Cross Appellant.

_____

DECIDED: October 27, 2006

_____


Before NEWMAN, MAYER, and LINN, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

In this antidumping action, Elkem Metals Company and Globe Metallurgical, Inc. (collectively "Elkem") appeal the decision of the United States Court of International Trade ("Court of International Trade") sustaining a determination by the United States Department of Commerce ("Commerce"), in which Commerce recalculated, pursuant to a prior remand from the Court of International Trade, the constructed value of silicon metal produced in Brazil by Rima Industrial S/A ("Rima"). <u>Elkem Metals Co. v. United</u>

States, No. 02-00232, 2005 WL 2077086 (Ct. Int'l Trade Aug. 26, 2005) ("Elkem II"). Rima and the United States cross-appeal, seeking reversal of the prior decision and remand order, Elkem Metals Co. v. United States, 350 F. Supp. 2d 1270 (Ct. Int'l Trade 2004) ("Elkem I"), in which the Court of International Trade remanded the case to Commerce with instructions to include in constructed value the value-added tax ("VAT") paid by Rima on its production inputs. Because Commerce's conclusion that the VAT paid by Rima should be excluded from constructed value is based on a permissible construction of the statute at issue, we reverse and remand as to the cross-appeal, and we dismiss Elkem's appeal as moot.

## I. BACKGROUND

### A. The Antidumping Laws

Through the antidumping statutes, Commerce has been delegated the task of protecting United States manufacturers from the sale of foreign goods in the United States at prices below the fair market value in their country of origin. See 19 U.S.C. § 1673; AIMCOR v. United States, 141 F.3d 1098, 1101 (Fed. Cir. 1998). To effect this goal, Commerce imposes duties on imported goods that correspond to the amount by which the foreign market value of the goods exceeds their domestic sales price. AIMCOR, 141 F.3d at 1101.

Commerce determines the foreign market value of goods by one of three methods prescribed by statute. The first and preferred method is to determine the price at which a product is sold in its country of origin "in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price." 19 U.S.C. § 1677b(a)(1)(B)(i). When,

in Commerce's determination, this is not possible, Commerce either may look to the price in a third country, id. § 1677b(a)(1)(C), or may use a "constructed value" determined by a statutory formula, id. § 1677b(a)(4).

The statutory formula by which constructed value is calculated provides that constructed value shall include

> the cost of materials and fabrication or other processing of any kind employed in producing the merchandise, during a period which would ordinarily permit the production of the merchandise in the ordinary course of business[.]

Id. § 1677b(e)(1). The statute further provides that

> the cost of materials shall be determined without regard to any internal tax in the exporting country imposed on such materials or their disposition which are remitted or refunded upon exportation of the subject merchandise produced from such materials.

Id. § 1677b(e).

This appeal concerns Commerce's interpretation of these statutory requirements and presents the question of whether the VAT that Rima incurred on its purchases of raw materials should be included in the constructed value of its exports of silicon metal from Brazil.

### B. Brazilian VAT

At issue in this appeal are two types of VAT that Brazil levies on domestic (Brazilian) purchases of certain goods and services: Imposto sobre a Circulação de Mercadorias e Serviços ("ICMS") and Imposto sobre Produtos Industrialzados ("IPI"). The distinction between the two is not relevant, and they are referred to throughout this

opinion jointly as "VAT."  The way Brazil collects[1] VAT is that a company such as Rima tallies, but does not pay immediately, the VAT it incurs on its purchases of inputs.  Final Results of Redetermination Pursuant to Court Remand, Elkem Metals Co. & Globe Metallurgical Inc. v. United States, Court No. 02-00232, at 3 (Dep't of Commerce June 8, 2004) ("First Remand Results").  At the end of each month, the VAT incurred on purchases of inputs is offset against the VAT paid by domestic customers on sales of the finished products.  If the amount of VAT collected from a company's domestic customers exceeds the VAT that the company incurred on its inputs, the company remits VAT payments to the Brazilian government.  Id.  If the VAT incurred on inputs exceeds the VAT collected, however—as may frequently occur when products that are exported are not subject to VAT—the company pays the VAT incurred, but it also receives an offsetting VAT credit for the difference between the VAT paid on purchases of its inputs and the VAT collected on domestic sales of its products.  Id. at 2–3.

Before the Brazilian tax laws were amended in 1996, VAT credits could only be redeemed to the government in payment of taxes owed.  Id. at 3–4.  Thus, a company's ability to use all of its credits was contingent on its tax liabilities; if it accrued credits faster than it incurred additional taxes, it would have insufficient tax liability to put all of its credits to use.  See Camargo Correa Metais, S.A. v. United States, 200 F.3d 771, 774 (Fed. Cir. 1999).  Under the amended law, however, credits are fungible and may be traded to other companies in lieu of cash when making purchases.  First Remand

---

[1]    For convenience, we refer in the present tense to the Brazilian VAT system as it existed during the Period of Review at issue in this appeal, July 1, 1999, to June 30, 2000.  As will be discussed below, prior decisions of this court considered the Brazilian VAT system as it existed prior to an amendment in 1996.  The record does not reflect, and it is irrelevant to our decision, whether Brazilian tax law remains the same today.

Results at 3–4; see also Silicon Metal from Brazil, 63 Fed. Reg. 42,001, 42,004 (Dep't of Commerce Aug. 6, 1998) (prelim. admin. review) (observing that "Brazil's new ICMS tax law allows companies to use ICMS tax credits . . . for the reduction in payment of electricity costs").

In part because of this change in the law, Commerce has developed a policy, via notice-and-comment rulemaking, of making a case-by-case inquiry as to whether an exporter/producer is able to fully offset its VAT liability by using its VAT credits. 63 Fed. Reg. at 42,004. Under this policy, VAT is included as a "cost" for purposes of calculating constructed value under 19 U.S.C. § 1677b(e) only to the extent that an exporter/producer does not fully use the VAT credits generated by export sales. Id.

## C. Procedural History

This appeal arises from Commerce's administrative review of the antidumping duty order it imposed on Rima's sales in the United States of silicon metal from Brazil between July 1, 1999, and June 30, 2000. After reviewing the answers to questionnaires it sent to Rima and conducting a verification of the questionnaire answers at Rima's headquarters in Brazil, Commerce published preliminary results of its review and solicited comments from the interested public. Silicon Metal from Brazil, 66 Fed. Reg. 40,980 (Dep't of Commerce Aug. 6, 2001) (prelim. admin. review) ("Preliminary Results"). After receiving comments from parties including Elkem, Commerce published final results of its review. Silicon Metal from Brazil, 67 Fed. Reg. 6488 (Dep't of Commerce Feb. 12, 2002) (final admin. review) ("Final Results").

During these proceedings, Commerce determined that Rima had fully recovered its outlays for VAT on inputs corresponding to exported goods. Issues and Decision

Memorandum for the Administrative Review of Silicon Metal from Brazil – 7/1/1999 through 6/30/2000; Final Results, at 36–37 cmt. 23 (U.S. Dep't Commerce Feb. 4, 2002) ("Final Results Memorandum"), adopted by Final Results, 67 Fed. Reg. at 6488. Therefore, in accordance with its policy, Commerce excluded the VAT on Rima's inputs from the constructed value of Rima's exported silicon. Id. Based on the resulting constructed value, Commerce then concluded that Rima's dumping margin was de minimis, meaning that no antidumping duties would be assessed on the silicon Rima imported to the United States. Final Results, 67 Fed. Reg. at 6489.

In response, Elkem filed suit in the Court of International Trade to challenge the Final Results. Complaint, Elkem Metals Co. v. United States, No. 02-00232 (Ct. Int'l Trade Apr. 15, 2002). After its initial motion to dismiss was denied, the United States moved for a remand to recalculate Rima's dumping margin with VAT on Rima's inputs included in constructed value; the Court of International Trade granted the motion. Order, Elkem Metals Co. v. United States, No. 02-00232 (Ct. Int'l Trade Feb. 25, 2004). However, on remand, Commerce concluded that between the VAT that Rima collected on Brazilian sales and the VAT credits that Rima used in lieu of cash, Rima had indeed recovered all of the VAT it incurred on inputs that corresponded to United States sales. First Remand Results at 2–3. Commerce adjusted its constructed value to fix clerical errors and to correct an erroneous double-counting of Rima's VAT credits—Rima had both excluded VAT from reported costs and reduced its material costs by the amount of the VAT credits—but Commerce left intact its finding that VAT should be excluded from constructed value. Id. at 3. It also left unchanged its final determination as to the dumping margin on the relevant imports of silicon. Id. at 8.

06-1043, -1092, -1141                    6

On review of the First Remand Results, the Court of International Trade held that as a matter of law, "[w]hen internal taxes are not refunded or remitted upon exportation of the subject merchandise, Commerce must include such internal taxes paid on inputs in its calculation" of constructed value. Elkem I, 350 F. Supp. 2d at 1275 (emphasis added). The court observed that "R[ima]'s use of VAT credits to purchase inputs during the period of review does not constitute a remittance or refund upon exportation." Id. Thus, the court concluded, "Commerce's exclusion of the VAT Rima paid on inputs in the calculation of [constructed value] is not in accordance with law." Id. The court again remanded the case to Commerce "with instructions to include the VAT paid by Rima in its recalculation of [constructed value] and make all necessary adjustments to the dumping margin." Id. at 1276.

On remand, Commerce recalculated the constructed value and dumping margin in accordance with the Court of International Trade's directions. Final Results of Redetermination Pursuant to Court Remand, Elkem Metals Co. v. United States, Court No. 02-00232, at 4 (Dep't of Commerce Mar. 16, 2005) ("Second Remand Results"). In light of this changed calculation, Elkem challenged Commerce's decision to accept at face value Rima's accounting of VAT, arguing that Rima's accounts inexplicably showed that Rima paid no VAT during certain months on purchases of electrodes. Id. at 8. Commerce rejected Elkem's argument on the ground that Rima's questionnaire responses had been verified through Commerce's ordinary procedures, and that "there is nothing in the record to prove or disprove the reason for the absence of VAT payments." Id. at 10. After making a few other adjustments not relevant here, Commerce recalculated Rima's dumping margin to be 0.48%, an increase from the First

<u>Remand Results</u>, but still under the de minimis threshold.  <u>Second Remand Results</u> at 15.

The Court of International Trade sustained the <u>Second Remand Results</u> in full. <u>Elkem II</u>.  Elkem appeals, reiterating its challenge to Commerce's decision to accept Rima's questionnaire responses as a proper accounting of the VAT paid on inputs.  The United States and Rima each cross-appeal, arguing that the VAT should have been excluded from constructed value.  We have jurisdiction under 28 U.S.C. § 1295(a)(5).

II. ANALYSIS: CROSS-APPEAL

A. Standard of Review

We review de novo a decision of the Court of International Trade affirming or reversing the final results of an administrative review.  <u>Camargo</u>, 200 F.3d at 773.  In so doing, we apply to Commerce's underlying administrative results the same standard of review that the Court of International Trade is required by statute to apply.  <u>Id.</u>  The Court of International Trade—and thus this court—is required to uphold final determinations by Commerce regarding antidumping duties unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

We also review de novo whether Commerce's interpretation of a governing statutory provision is "in accordance with law," but we do so within the framework established by <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).  <u>See</u> <u>Koyo Seiko Co. v. United States</u>, 36 F.3d 1565, 1570 (Fed. Cir. 1994).  In <u>Chevron</u>, the Supreme Court enunciated the standard by which courts must review agencies' interpretations of the statutes that govern them:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43 (footnotes omitted).

## B. The Statutory Language

To determine whether Commerce complied with the requirements of 19 U.S.C. § 1677b(e), our analysis "begins with the language of the statute." See VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1579 (Fed. Cir. 1990). Section 1677b(e) requires that constructed value include "the cost of materials and fabrication or other processing of any kind employed in producing the merchandise." Other than this broad requirement, however, it provides little further guidance as to what expenses qualify as "costs." The only explicit rule is one of exclusion: the statute provides that "the cost of materials shall be determined without regard to any internal tax in the exporting country imposed on such materials or their disposition which are remitted or refunded upon exportation of the subject merchandise produced from such materials." 19 U.S.C. § 1677b(e).

Under the terms of this provision, if Brazilian VAT were refunded or remitted upon export, Commerce would be required to exclude it from constructed value. The inverse does not follow, however; by its terms, the statute includes no requirement that Commerce is required to include in constructed value taxes that are not refunded or

remitted upon export. Thus, the statute is silent as to whether the VAT at issue in this appeal should be included in constructed value;[2] in <u>Chevron</u> terms, Congress has not "directly spoken to the precise question at issue." <u>Chevron</u>, 467 U.S. at 843.

Despite this silence, Elkem argues, and the Court of International Trade held, that the statute implicitly requires Commerce to include any taxes not "remitted or refunded" in its calculation of constructed value. <u>Elkem I</u>, 350 F. Supp. 2d at 1275. This interpretation relies on the canon of statutory construction "<u>expressio unius est exclusio alterius</u>"—"the expression of one thing is the exclusion of another." <u>Cook v. Principi</u>, 318 F.3d 1334, 1339 n.6 (Fed. Cir. 2002) (en banc). The Supreme Court has observed, however, that "[b]ecause of the deference given to agencies on matters about which the statutes they administer are silent, . . . <u>expressio unius</u> ought to have somewhat reduced force in this context." <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 102 (2002).

Thus, because the antidumping statutes leave to Commerce the determination of how to define "the cost of materials and fabrication or processing," 19 U.S.C. § 1677b(e)(1), we conclude that it is appropriate to read the statute literally, and we decline to impose upon Commerce a restriction that is, at most, only implied. This is not a case in which Commerce has attempted to derive statutory authority from the absence of prohibitory language, <u>see</u> <u>FAG Italia S.p.A. v. United States</u>, 291 F.3d 806, 817 (Fed. Cir. 2002); rather, it is a case where a statute imposes one restriction on a term— "cost"—but leaves that term otherwise undefined.

---

[2] The parties agree that the VAT Rima incurred on its inputs was neither "remitted [n]or refunded." We assume without deciding that this is correct, but we need not and do not decide what constitutes a remittance or refund for purposes of section 1677b(e).

C. Commerce's Interpretation

Because "Congress has not directly addressed the precise question at issue," we reach step two of the <u>Chevron</u> framework: "whether the agency's answer is based on a permissible construction of the statute." <u>Chevron</u>, 467 U.S. at 843.

As a threshold matter, we note that Commerce has the authority to "make such rules and regulations as may be necessary to carry out" section 1677b(e), <u>see</u> 19 U.S.C. § 1624,[3] and that Commerce's policy on the exclusion of VAT from constructed value was promulgated through notice-and-comment rulemaking, <u>Silicon Metal from Brazil</u>, 63 Fed. Reg. at 42,004. Thus, its policy is a "formal expression of an agency's interpretation of a statute that it administers" that is "normally entitled to <u>Chevron</u> deference." <u>Motorola, Inc. v. United States</u>, 436 F.3d 1357, 1365 (Fed. Cir. 2006).

Viewed through the deferential lens of <u>Chevron</u>, Commerce's policy is a reasonable interpretation of section 1677b(e). A proper accounting of the "cost of materials and fabrication or processing" is inherently a factual inquiry, and it requires an understanding of the economic realities that each producer/exporter faces. One component of such costs may well be VAT, but it is entirely appropriate for Commerce to make an individual determination as to whether and to what extent VAT is, given the circumstances of a particular country and company, a cost. Here, Commerce has determined that the Brazilian tax system can have the effect of offsetting VAT by means

---

[3]     Under 19 U.S.C. § 1624, "the Secretary of the Treasury is authorized to make such rules and regulations as may be necessary to carry out the provisions of" title 19, chapter 4 of the United States Code (the Tariff Act of 1930), which includes section 1677b. "[A]ll functions of the Secretary of the Treasury . . . pursuant to . . . title VII of the Tariff Act of 1930" (which includes 19 U.S.C. § 1677b) were transferred to the Secretary of Commerce pursuant to Reorganization Plan No. 3 of 1979, § 5(a)(1)(C), 93 Stat. 1381, 1383 (codified at 19 U.S.C. § 2171 note). This includes the Secretary of Treasury's rulemaking authority.

of a credit, and has further determined that during the period of review, Rima fully offset its VAT costs on exported silicon by using its VAT credits. On these facts, it is improper for a reviewing court to upset these determinations by Commerce.

## D. Prior Precedents

The Court of International Trade relied upon, and Elkem now emphasizes, our prior decisions in AIMCOR and Camargo, in which we previously considered Brazilian VAT in the context of the constructed value of silicon exports and upheld the inclusion of VAT in constructed value. AIMCOR, 141 F.3d at 1108–10; Camargo, 200 F.3d at 774–75. These decisions, however, are not contrary to our holding today, for two reasons.

First, in both decisions, we recognized that a major reason for including VAT in constructed value, notwithstanding the existence of VAT credits, was the possibility that VAT credits would never be used and that VAT would therefore amount to a cost notwithstanding the award of an offsetting credit. In Camargo, we observed that "recovery of [VAT] warranting exclusion from constructed value . . . is contingent upon the level of participation in Brazil's domestic market," because "a producer who exports most, if not all its product, may have no domestic tax liability against which to apply its credit." Camargo, 200 F.3d at 774. And in AIMCOR, we explicitly upheld Commerce's decision to permit the company being reviewed to submit evidence that it was "able to recover all of the taxes paid on inputs"; the company was unable to do so. AIMCOR, 141 F.3d at 1109 (quoting Ferrosilicon from Brazil, 59 Fed. Reg. 732, 737 (Jan. 6, 1994)). These concerns do not apply in the instant case: Brazil's VAT laws have changed such that the recovery of taxes is no longer contingent on a company's ability

to apply its VAT credits to future tax liabilities, and Commerce has determined in any event that Rima has fully offset its tax liabilities.

Second, in both AIMCOR and Camargo, Commerce itself had determined that VAT should be included in constructed value. AIMCOR, 141 F.3d at 1112 (affirming the Court of International Trade's decision to sustain Commerce's inclusion of VAT); Camargo, 200 F.3d at 774 (reversing the Court of International Trade's decision to require Commerce to exclude VAT). Our upholding a determination by Commerce under a deferential standard of review does not imply that a contrary determination by Commerce is unreasonable. Although we held in Camargo that "unless ICMS are remitted or refunded 'upon exportation,' they are properly included in the constructed value of the exported merchandise," 200 F.3d at 774, they may also properly be excluded if, as is the case here, Commerce determines that the facts so warrant.

In sum, the Court of International Trade erred by reviewing with insufficient deference Commerce's policy regarding the exclusion of VAT from constructed value. On remand, Commerce should be permitted to recalculate Rima's dumping margin in light of any adjustments it made in the Second Remand Results, but using the methodology it promulgated in Silicon Metal from Brazil, 63 Fed. Reg. at 42,004, and applied in the First Remand Results.

### III. ANALYSIS: DIRECT APPEAL

Because we conclude with respect to the cross-appeals that VAT may properly be excluded from constructed value, the question of whether Rima correctly reported that VAT is irrelevant to its final dumping margin. Accordingly, Elkem's appeal is moot, and we need not decide the issues it presents.

For the same reason, also moot is Rima's argument, not joined by the United States, that if VAT is included in constructed value, Commerce must exclude any VAT that was paid by redeeming credits rather than by paying cash.

## IV. CONCLUSION

For the foregoing reasons, we hold on cross-appeal that the Court of International Trade erred when it overturned Commerce's exclusion of VAT from constructed value. The judgment of the Court of International Trade is reversed, and the case is remanded for further proceedings consistent with this opinion. Elkem's appeal is dismissed as moot.

06-1043: <u>DISMISSED</u>; 06-1092, -1141: <u>REVERSED AND REMANDED</u>