PROST, Circuit Judge,
dissenting.
I respectfully dissent from this opinion because I do not agree with the majority that the agency’s decision to create an exception to the Multinational Corporation Provision, 19 U.S.C. § 1677b(d) (“MNC Rule”) is a permissible interpretation of a statute such that it is entitled to Chevron deference under the first inquiry of the Chevron test. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
The MNC Rule consists of three conditions and a directive. See 19 U.S.C. § 1677b(d). If the agency determines that an import scheme meets the three conditions, then the agency must follow the directive for determining the normal value of the imported goods. In the present case, the three conditions are met. The position of the agency is, however, that the agency need not follow the directive, because the subject goods are imported by a corporation that has affiliates in nonmarket economies and thus presents an exception to the MNC Rule. The agency argues, and the majority agrees, that since the MNC Rule is silent on the issue of whether nonmarket economies are subject to the rule, Chevron applies. The agency then argues, and the majority again agrees, that the agency’s interpretation of the MNC Rule as excepting nonmarket economies is reasonable, pointing to words in the directive like “sold” and “price,” which are not typically used to describe nonmarket economies. The agency and majority positions in this case are flawed in two respects.
First, agencies are not free to create exceptions to statutes and wrap themselves in Chevron, claiming that the statute is silent as to whether the exception exists. Congress need not explicitly negate all potential exceptions to a given statute in order to ensure that the plain language of the statute is given effect. See, e.g., United States v. Brockamp, 519 U.S. 347, 350-52, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (declining to read an equitable tolling exception into I.R.C. § 6511). The statute here unambiguously sets forth three conditions for determining when the MNC Rule applies and when it does not. Cf. Barnhart v. Sigmon Coal Co., 534 U.S. 438, 454, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (rejecting the Social Security Commission’s interpretation that the Coal Industry Retiree Health Benefit Act of 1992 applied to successors of signatory operators because the statute clearly stated who may be assigned liability and such successors were not included). Finding that the MNC Rule does not apply to nonmarket economies even when the three conditions are met effectively adds a fourth condition. Commerce’s argument is thus no different than arguing that a statute setting forth three conditions is “silent” on whether there is a fourth condition.[1] Such a position is illogical and in *1374 consistent with proper statutory interpretation. See Carden v. Salazar, — U.S. —, 129 S.Ct. 1058, 1064-65, 172 L.Ed.2d 791 (2009) (refusing to give Chevron deference to an agency interpretation of a statute where Congress “left no gap in [the statute] for the agency to fill”); 2A Singer, Sutherland Statutory Construction § 7.23 (4th ed.1984); cf. Elkem Metals Co. v. United States, 468 F.3d 795, 801 (Fed.Cir. 2006) (reading a statute literally without imposing additional restrictions on an agency not found in the statute); FAG Italia S.p.A. v. United States, 291 F.3d 806, 817 (Fed.Cir.2002) (holding that an agency is not granted statutory authority just because the statute fails to prohibit the agency from acting in a particular way).
It is the prerogative of Congress, not Commerce, to determine whether excepting nonmarket economies promotes the purpose of the MNC Rule, and what the scope of the exception should be. The purpose of the MNC Rule is to examine prices among multinational affiliates and prevent discriminatory pricing schemes that harm domestic industry. Nonmarket economy affiliates are not exceptions to the practice of discriminatory pricing, and discriminatory pricing through nonmarket economy affiliates is just as harmful to domestic industry as other multinational pricing schemes. For instance, just because a corporation is not autonomous in setting prices in a nonmarket economy does not mean that it cannot take advantage of higher prices there to subsidize dumping in the United States.
Second, when an agency interprets a statute, it must do so by articulating some coherent position on the meaning of the statute. The agency failed to do so in this case. This failure became particularly clear at oral argument before this court. The agency contended that Thai I-Mei should be excepted from the MNC Rule, arguing that its two affiliates were both nonmarket economies. The agency was unable to articulate, however, any standard for determining when a multinational corporation with affiliates in nonmarket economies would be subject to or excepted from the MNC Rule. The agency took no position, for example, on whether a corporation with several affiliates in market economies and one affiliate in a nonmarket economy would be excepted. In response to a follow-up question about the percentage of nonmarket economy affiliates a multinational corporation might have before the MNC Rule stops being applicable, the agency stated that such a decision would be made on a case-by-case basis. See Oral Argument available at http:// oralarguments. cafe, uscourts. gov/'mp3/ 2009-1375.mp3.
The suggestion of the agency that it can decide on a case-by-case basis whether to apply a mandatory rule, where no exceptions to the rule are articulated in the statute, is not the kind of statutory interpretation implicating a Chevron analysis. We cannot decide whether the agency’s interpretation of the MNC Rule is reasonable where it has not even articulated a reviewable interpretation.[2]
Granted, it is the responsibility of the agency to determine how to best apply the *1375 MNC Rule to a multinational corporation that includes affiliates in nonmarket economies. Accordingly, Commerce may determine what kinds of “adjustments” to make to cost of production and normal value, as suggested in the directive clause of the MNC Rule. See 19 U.S.C. § 1677b(d). Commerce may also need, for example, to interpret parts of the directive clause, like “sold” and “price” such that they have meaning in the context of nonmarket economies. See id. Such interpretations would be entitled to Chevron deference. A conditional determination that a particular multinational corporation is not subject to the MNC Rule, however, should not. For these reasons I would reverse the decision of the Court of International Trade and remand the ease with instructions to follow the MNC Rule in determining the normal value of Thai I-Mei’s imported shrimp products.

. In this way, the statute is not "silent” on whether the MNC Rule applies to nonmarket *1374 economies any more than it is "silent” on whether the MNC Rule applies on Tuesdays.

. Because the scope of the agency's exception is unclear, it becomes unclear what practical implications should inform a determination of reasonableness. For example, a large percentage of multinational corporations have an affiliate in China. Excepting every multinational corporation with an affiliate located in China suggests that the majority of multinational corporations may be excepted from the *1375 MNC Rule. It also leads to the untenable situation that any multinational corporation can avoid application of the MNC Rule and engage in price discrimination by establishing a nominal affiliate office in a nonmarket economy. Clearly this would not comport with the intent of Congress.