[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10279
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 14, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:08-cv-00126-RWS

FORSYTH COUNTY,
a political subdivision of the State of Georgia,

Plaintiff - Appellant,

versus

UNITED STATES ARMY CORPS OF ENGINEERS,
COLONEL BYRON G. JORNS,
Mobile District Engineer, in his official capacity,
BRIGADIER GENERAL JOSEPH SCHROEDEL,
South Atlantic Division Commander, in his official capacity,
MAJOR GENERAL DON T. RILEY,
Director of Civil Works, in his official capacity,
LIEUTENANT GENERAL ROBERT L. VAN ANTWERP,
Commander and Chief of Engineers, in his official capacity, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 14, 2011)

Before WILSON and PRYOR, Circuit Judges, and BUCKLEW,[*] District Judge.

PRYOR, Circuit Judge:

This appeal from the denial of a preliminary injunction requires us to determine whether an evaluation of competing proposals for the lease of Bethel Park on Lake Sydney Lanier in Forsyth County, Georgia, by the United States Army Corps of Engineers is subject to a right of first refusal for a local government and, if not, whether the weight accorded to a preference for the lease is otherwise subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. The Flood Control Act of 1944 permits the Corps to grant leases of public parks and recreational facilities at water resource development projects on terms and for purposes that it determines are "reasonable in the public interest" and requires the Corps to give a preference to "local governmental agencies," among others. 16 U.S.C. § 460d. Forsyth County, Georgia, and the Young Men's Christian Association of Greater Atlanta submitted competing proposals to lease Bethel Park. After the Corps evaluated each proposal, it awarded the lease to the Association because the Corps determined that the award would better serve the public interest to a degree sufficient to overcome the

[*]Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

2

preference owed to the County under section 460d. The County filed a complaint that the Corps had violated the preference clause in section 460d and moved for a preliminary injunction to prevent the Corps from leasing the park to the Association. The district court denied the motion on the ground that the County was unlikely to succeed on the merits of its complaint. Because section 460d does not create a right of first refusal for preference entities and the weight accorded to the preference for a lease is "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and is not subject to judicial review, we affirm.

## I. BACKGROUND

The Flood Control Act of 1944 empowers "[t]he Chief of Engineers, under the supervision of the Secretary of the Army, . . . to construct, maintain, and operate public park and recreational facilities at water resource development projects under the control of the Department of the Army." 16 U.S.C. § 460d. The Act also empowers the Secretary of the Army "to grant leases of lands, including structures or facilities thereon, at water resource development projects for such periods, and upon such terms and for such purposes as he may deem reasonable in the public interest." Id. The Act conditions the grant of a lease on several additional considerations, one of which is a preference for certain entities:

> [P]reference shall be given to federally recognized Indian tribes and Federal, State, or local governmental agencies, and licenses or leases

> where appropriate, may be granted without monetary considerations, to such Indian tribes or agencies for the use of all or any portion of a project area for any public purpose, when the Secretary of the Army determines such action to be in the public interest, and for such periods of time and upon such conditions as he may find advisable[.]

Id. The Secretary of the Army has also promulgated a regulation that mirrors the language of section 460d:

> The Secretary of the Army is authorized to grant leases of lands, including structures or facilities thereon, in reservoir areas for such periods and upon such terms as he may deem reasonable[.] . . . [P]reference shall be given to Federal, State, or local governmental agencies, and licenses may be granted without monetary considerations to such agencies for the use of all or any portion of a reservoir area, when the Secretary of the Army determines such actions to be in the public interest, and for such periods of time and upon such conditions as he may find advisable.

33 C.F.R. § 211.6(a)(2).

Under these grants of authority, the United States Army Corps of Engineers administers 38 parks and recreational facilities on Lake Sidney Lanier in northern Georgia. Over time, the Corps has also granted 44 leases for parks and recreational facilities around the lake to various entities, public and private. These grants consist of fourteen leases to local governmental entities, including three to Forsyth County, Georgia; ten leases to the state of Georgia; eight leases to private concessionaires; and twelve leases to private organizations, including the Boys

4

Club, the Girl Scouts, the Methodist Church, the American Legion, and the Young Men's Christian Association.

One of the parks administered by the Corps is Bethel Park, a day-use park that sits by Lake Lanier on about 62 acres. Of the 38 parks that the Corps operated in 2008, Bethel Park ranked 37th in terms of public usage. In March 2003, the Young Men's Christian Association of Greater Atlanta approached the Corps to discuss the possibility of leasing more property on Lake Lanier for a summer camp. The Association submitted a formal proposal to the Corps to lease Bethel Park in 2004, and supplemented that proposal in 2005 with a proposed master plan that detailed its development plans. The Association proposed to develop Bethel Park to provide overnight and day-use facilities for campers, including cabins, a dining hall, active recreation areas, a multi-purpose court, outdoor amphitheaters and classrooms, hiking trails, a marina, a fishing pier, and a beach area.

Forsyth County also sought leases from the Corps. In 2004, for example, the County emailed the Corps to inquire about the possibility of leasing property around Lake Lanier. As a result of this inquiry and further discussions, the Corps leased Young Deer and Charleston Parks to the County in March 2005.

In December 2005, the Corps issued a "Recreation Development Policy for Outgranted Corps Land," a new policy governing the evaluation of proposals for

5

recreational development of lands and waters at water resource development

projects. The new policy established the following several criteria that a district

team of Corps employees must follow when it "evaluate[s] requests for recreation

development":

> Consistent with project purposes; Reasonable connection to the project's
> natural and other resources; Consistent with land use classifications and
> resource management objectives in the Project Master Plan (or
> supplement thereto); In the public interest; Justified by public demand
> . . . ; Economically viable . . . ; Meets the recreation demands created by
> the project itself while balancing natural resources requirements.

In April 2006, in a letter to the Corps, the County sought to lease 15 parks

administered by the Corps, including Bethel Park. The County acknowledged that

it was aware that the Corps was negotiating a lease of Bethel Park with "other

entities," but the County stated that a "local government would have 'first option'

should the Corps ever decide to lease these parks out." The Corps agreed to

discuss leasing several of the 15 parks to the County, but informed the County that

it "remain[ed] committed to . . . the [Association] . . . for the operation and

maintenance of [Bethel Park]. . . . [D]iscussions with the [Association] have been

ongoing since early 2003." Later that month, the Corps made available to the

public and requested comments on a draft Environmental Assessment and Master

Development Plan for Bethel Park prepared by the Association. The County

submitted a comment in which it argued that it "was not given a right of first

6

refusal or 'preference' with respect to acquiring Bethel Park as required by federal law."

In September 2006, the County renewed its request to lease Bethel Park from the Corps. The Corps invited the County to submit a written proposal with supporting documentation, including a development plan and a market feasibility study. The Corps also invited the Association to submit a renewed proposal with supporting documentation. In February 2007, the County and the Association submitted their proposals to the Corps. The proposal of the Association essentially mirrored its previous proposal. The County proposed an overnight and day-use facility, with camping sites for recreational vehicles and tent campers, a day-use area, a boat ramp and trailer parking area, a 90-space parking area, comfort facilities, an environmental education area, a beach area, and walking trails. The Corps evaluated both proposals and released a new Environmental Assessment for public comment in January 2008 that discussed the environmental impacts of leasing Bethel Park "to a yet undetermined non-Federal entity." The Corps received over 4,900 comments on the Assessment, most of which were letters of support for either the Association or the County.

On June 5, 2008, the Corps announced in a news release that it planned to lease Bethel Park to the Association. The Corps explained that it had "conducted

7

an objective and very detailed evaluation of the two proposals to determine which one was in the best interest of the public." The Corps assigned each of the proposals a scaled score for specific categories to ensure that it "carefully followed [its] mandated seven evaluation criteria" and determined that the proposal of the Association "ranked significantly higher in three of the evaluated areas[:] . . . public interest, market study, and feasibility." Overall, the Corps awarded 45 points to the Association and 32 points to the County; these totals included an award of 37 points to the Association and an award of 30 points to the County on the basis of whether "the proposal [was] in the public interest." The Corps concluded that the proposal of the County "only replicate[d] and add[ed] to similar facilities already located within a 25-mile radius of the site location," but the proposal of the Association "offer[ed] relatively unique facilities and programs for Lake Lanier, with a broad array of activities." The Corps also stated that the County had not explained how it intended to fund its proposal at a cost of $4.4 million. The Association, on the other hand, provided "a detailed plan on [$20 million of] capital funding for the facilities" and "substantiate[d] [its] figures and projections based on data from ongoing operations at similar [Association] facilities." The Corps was confident that the proposal of the Association would provide "a long term benefit to the public in the region." The Corps provided the

text of section 460d in its entirety in the evaluation and concluded that "due to the factors set out above, the proposal by the [Association] should be considered in the best interest of the public to a degree sufficient to overcome the preference set out in the statute."

The County filed a complaint and a motion for a preliminary injunction in the district court to prevent the Corps from leasing Bethel Park to the Association. The County alleged, in part, that the Corps had violated the preference requirement for local governmental agencies in section 460d. Although the Association executed a lease and forwarded it to the Corps, the Corps refused to sign the lease while it negotiated with the County. In the light of the settlement negotiations between the Corps and the County, the district court denied the motion of the County for a preliminary injunction with a right to refile. The district court also denied the motion of the Association to intervene, in part because the Association had failed to provide "any evidence of a written agreement or other contractual privity in existence between [the Association] and the Corps regarding . . . Bethel Park." After its negotiations with the County were unsuccessful, the Corps executed a lease for Bethel Park with the Association on September 22, 2009, and the district court permitted the Association to intervene.

The County renewed its motion for a preliminary injunction. At a hearing on the motion, the County acknowledged that the Corps purportedly had granted the preference, but the County disputed the result of that application:

> The Corps, by its own actions, has . . . tried to embrace the preference. . . . The position of the Corps has been, we're going to try and comply with the Flood Control Act in this manner, we're going to try to apply the preference. It is simply the County's position . . . that it was done absolutely incorrectly.

On December 23, 2009, the district court denied the motion of the County for a preliminary injunction. The district court applied deference to the decision of the Corps under Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S. Ct. 2778 (1984), and concluded that the County had failed to establish a likelihood of success on the merits. The district court reasoned that "the clear objective [of section 460d] is to entrust the [Corps] to grant leases of land in the public interest" and that a "preferred organization must also meet the primary and founding goal of the statute by serving the public interest." The district court concluded that the Corps had granted the preferential treatment owed to the County under section 460d, but had reasonably determined within its discretion that, despite the preference, the proposal of the Association "better served the public interest."

## II. STANDARD OF REVIEW

10

"We review the decision to deny a preliminary injunction for abuse of discretion." Scott v. Roberts, 612 F.3d 1279, 1289 (11th Cir. 2010). "In so doing, we review the findings of fact of the district court for clear error and legal conclusions de novo." Id. "This scope of review will lead to reversal only if the district court applies an incorrect legal standard, or applies improper procedures, or relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly unreasonable or incorrect." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1226 (11th Cir. 2005). Otherwise, "an abuse of discretion standard recognizes there is a range of choice within which we will not reverse the district court even if we might have reached a different decision." Id. A party that seeks a preliminary injunction must establish that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). "'A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.'" Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting

11

All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

### III. DISCUSSION

We divide our discussion in two parts. First, we explain that section 460d does not create a right of first refusal for preference entities. Second, we explain that the weight accorded to a preference for a lease under section 460d is "committed to agency discretion by law" and is not subject to judicial review under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2).

*A. Section 460d Does Not Create a Right of First Refusal for Preference Entities.*

The County argues that section 460d unambiguously creates a right of first refusal for preference entities for leases of lands at water resource development projects as long as those entities are "ready and willing" to "implement a bona-fide recreational plan," but we disagree. Although section 460d requires that "preference shall be given to . . . local governmental agencies," it also empowers the Secretary of the Army to grant leases "upon such terms and for such purposes as he may deem reasonable in the public interest." 16 U.S.C. § 460d. The Corps must give a local government a preference, but the Corps must also consider the public interest. The 2005 Recreation Development Policy followed by the Corps, which became Chapter 16 of Engineer Regulation 1130-2-550 in 2009, provides

12

several factors the Corps must consider when it evaluates competing proposals for a lease under section 460d, including the purposes of the project, natural and other resources, land use classifications, public demand, economic viability, and recreational demands.

In this kind of competitive or commercial process, a preference gives a competitor an advantage, but not an entitlement to win. We have held that another provision of the Flood Control Act of 1944 that directed the Secretary of Energy to transmit and dispose of power under his control "in such manner as to encourage the most widespread use thereof" and provided that "[p]reference in the sale of such power and energy shall be given to public bodies and corporations," 16 U.S.C. § 825s, "merely establishe[d] a series of general directives to control the distribution of excess electricity" and did "not establish an entitlement to power," Greenwood Utils. Comm'n v. Hodel, 764 F.2d 1459, 1464 (11th Cir. 1985). The same is true here. The preference clause in section 460d does not create an entitlement to the lease of Bethel Park for the County; section 460d establishes general factors that the Corps must consider when it evaluates proposals for leases.

The County contends that the Corps violated its own regulations when it awarded the lease of Bethel Park to the Association, but we again disagree. The regulation that governs leases under section 460d permits the Secretary of the

13

Army to lease lands "in reservoir areas for such periods and upon such terms as he may deem reasonable" and requires that "preference shall be given to Federal, State, or local governmental agencies." 33 C.F.R. § 211.6(a)(2). This regulation repeats the substantive requirements of section 460d and fails to support the argument of the County for a right of first refusal. Although the County cites another regulation, 32 C.F.R. § 643.23, that provides the order of "preference" for some leases by the Army, 10 U.S.C. § 2667, that regulation does not govern the lease for the water development project at Bethel Park, which the Corps and the Association executed under section 460d. Section 2667, in contrast with section 460d, provides "[o]ne of the principal authorities for the use of military real estate for commercial purposes." 32 C.F.R. § 643.3; see also Eng'r Reg. 405-1-12 (explaining the difference between leases under section 460d and section 2667).

*B. The Weighing of the Preference by the Corps is Not Subject to Judicial Review under the Administrative Procedure Act.*

The County argues alternatively that the Corps gave no discernible weight or value to the preference in the evaluation of the competing proposals, but we must decide first whether that decision is even subject to judicial review. Before we can review the evaluation by the Corps under the Administrative Procedure Act, the County "must first clear the hurdle of § 701(a)," Heckler v. Chaney, 470 U.S. 821, 828, 105 S. Ct. 1649, 1654 (1985), which provides that final agency

14

action is subject to judicial review unless "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2).  The County cannot clear that hurdle.

The Supreme Court has explained that the primary focus of section 701(a)(2) is whether the governing statute provides the courts with "law to apply":

> [W]e therefore turn to the [applicable federal statute] to determine whether in this case Congress has provided us with "law to apply."  If it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is "law to apply" under § 701(a)(2), and courts may require that the agency follow that law; if it has not, then an agency . . . decision [is] "committed to agency discretion by law" within the meaning of that section.

Heckler, 470 U.S. at 834–35, 105 S. Ct. at 1657.  Although section 701(a)(2) "is a very narrow exception" and only "applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply," Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S. Ct. 814, 820–21 (1971) (footnote and internal quotation marks omitted), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 97 S. Ct. 980 (1977), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," Heckler, 470 U.S. at 830, 105 S. Ct. at 1655.

We have held that the Secretary of the Interior's statutory authority to acquire land in trust for Indians was "committed to agency discretion by law"

15

under section 701(a)(2) when the Secretary's decision "involve[d] a myriad of factors" and the governing statute provided the Secretary "broad discretion" and failed to "delineate the circumstances under which exercise of [that] discretion [was] appropriate." Fla. Dep't of Bus. Regulation v. U.S. Dep't of Interior, 768 F.2d 1248, 1256 (11th Cir. 1985). The statute empowered the Secretary, "in his discretion, to acquire . . . any interest in lands . . . for the purpose of providing land for Indians." 25 U.S.C. § 465. We explained that "[i]f there are no judicially manageable standards available for judging how and when an agency should exercise its discretion, then it is impossible to determine even whether the agency abused its discretion." Fla. Dep't of Bus. Regulation, 768 F.2d at 1255. We also held that an accompanying regulation did not provide "law to apply" even though it provided factors the Secretary had to consider under the federal statute:

> [T]he factors, although they are guides for the exercise of the Secretary's discretion, are not "law" that a reviewing court can apply. The regulation does not purport to state how the agency should balance these factors in a particular case, or what weight to assign to each factor. . . . The factors listed in the regulation are not the kind of legal principles courts are familiar with applying to a particular case.

Id. at 1256–57. See also Lenis v. U.S. Att'y Gen., 525 F.3d 1291, 1294 (11th Cir. 2008); Haitian Refugee Ctr., Inc. v. Baker, 953 F.2d 1498, 1507–08 (11th Cir. 1992); S. Research Inst. v. Griffin Corp., 938 F.2d 1249, 1254–55 (11th Cir.

16

1991); Am. Fed'n of Gov't Emps., Local 2017 v. Brown, 680 F.2d 722, 725–27 (11th Cir. 1982); Bullard v. Webster, 623 F.2d 1042, 1046 (5th Cir. 1980).

We are without "law to apply" to govern the review of the weight accorded the preference for the lease of Bethel Park. Although the statutory and regulatory framework grants a preference for the County, that framework also requires the Secretary of the Army to consider the public interest. The 2005 Recreation Development Policy provides several additional factors that the Corps must consider when it evaluates proposals for leases. No law provides "how the agency should balance these factors in a particular case, or what weight to assign to each factor." Fla. Dep't of Bus. Regulation, 768 F.2d at 1256. Section 460d instead grants the Secretary broad discretion to award leases "for such periods, and upon such terms and for such purposes as he may deem reasonable in the public interest." 16 U.S.C. § 460d. We have recognized that "'[t]he court is not empowered to substitute its judgment for that of the agency,'" Envtl. Def. Fund, Inc. v. Corps of Eng'rs of U.S. Army, 492 F.2d 1123, 1139 n.33 (5th Cir. 1974) (quoting Overton Park, 401 U.S. at 416, 91 S. Ct. at 824), when the relevant statute "'leaves room for a responsible exercise of discretion and may not require particular substantive results in particular problematic instances,'" id. at 1139–40 n.33 (quoting Calvert Cliffs' Coordinating Comm., Inc. v. U.S. Atomic Energy

17

Comm'n, 449 F.2d 1109, 1112 (D.C. Cir. 1971)).  A challenge to the procedural compliance of agency action may warrant "full court consideration," but a "determination of the point where the final balance to act or withhold action is so broadly committed to quasi-legislative agency action that court review is exceedingly narrow."  Id. at 1139 n.33.

The district court did not abuse its discretion when it denied the motion of the County for a preliminary injunction.  The County failed to establish a substantial likelihood of success on the merits of its complaint.  The County offered no proof that the Corps had wholly ignored the preference clause of section 460d.  The Corps instead presented evidence that it had granted the County a preference, but the County asked the district court to second guess the weight accorded that preference amidst a host of other factors considered by the Corps in its evaluation of the competing proposals.  Because there is no "law to apply" and no "meaningful standard against which to judge" the weight accorded the preference for the lease of Bethel Park, that decision by the Corps is not subject to judicial review under the Administrative Procedure Act.  The weighing of the preference for the lease is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

## IV.  CONCLUSION

We **AFFIRM** the denial of the motion for a preliminary injunction.