**KAKAWI YACHTING, INC.,**
**Plaintiff/Counter–**
**Defendant,**

v.

**MARLOW MARINE SALES, INC.,**
et al., **Defendants/Counter–**
**Plaintiffs.**

**Marlow Marine Sales, Inc.,**
**Third–Party Plaintiff,**

v.

**Bureau Veritas Marine, Inc.**
**Third–Party Defendant.**

**Case No: 8:13–cv–1408–T–TBM**

United States District Court,
M.D. Florida,
**Tampa Division.**

Signed 10/03/2014

Scott A. Wagner, John J. Del Rossi, Michael T. Moore, Moore & Company, Coral Gables, FL, for Petitioner.

Aubrey Omar Dicus, Jr., Caitlin Colleen Docherty, Howard Philip Ross, Battaglia, Ross, Dicus & Wein, PA, St. Petersburg, FL, James Derrick Maginness, Norton, Hammersley, Lopez & Skokos, PA, Sarasota, FL, for Respondent.

## ORDER

THOMAS B. McCOUN III UNITED STATES MAGISTRATE JUDGE

THIS MATTER is before the Court on Third–Party Plaintiff Marlow Marine Sales, Inc.'s **Emergency Motion Seeking Preliminary Injunction and/or Motion to Stay, Enjoin, or Stop Arbitration Proceedings** (Doc. 185),[1] and Bureau Veritas Marine Inc.'s response in opposition (Doc. 188).[2] In short, Marlow Marine Sales, Inc.

---

1. In support of its Motion, Marlow Marine Sales, Inc., attaches correspondence by and between its counsel and Bureau Veritas' British counsel from the law firm of Gateley LLP. (Docs. 185–1 to 185–4).

2. In support, Bureau Veritas Marine Inc., files the Declaration of Pierre Frey, Director of General Affairs, Marine Division for Bureau Veritas, S.A., with supporting exhibits, as well as the Declaration of Nicholas Martin

seeks to enjoin Bureau Veritas Marine, Inc., from commencing arbitration proceedings in London. Oral arguments on the instant Motion and Bureau Veritas Marine, Inc.'s Motion to Dismiss or Stay and Compel Arbitration, or in the Alternative, to Sever the Third Party Complaint Against Third Party Defendant, Bureau Veritas Marine, Inc. (Doc. 172) were held on August 1, 2014.

By way of background, the underlying suit involves claims by Kakawi Yachting, Inc. ("Plaintiff" or "Kakawi") against various Marlow entities and their principals over the construction and sale of a custom-built Marlow Explorer yacht. Plaintiff alleges that post-closing on the yacht, it discovered numerous defects and deficiencies in the yacht which went unaddressed by Defendants. Moreover, the yacht's classification society, Bureau Veritas, issued conditions of class which too required corrections which the Marlow entities declined to address. Marlow Marine Sales, Inc. ("Marlow Sales"), the seller of the subject yacht, filed a Third Party Complaint against Bureau Veritas Marine, Inc. ("BV Marine") on May 15, 2014. (Doc. 159). By its allegations, pursuant to the sales agreement with Plaintiff, the vessel was to be classed by BV Marine, a member of the International Association of Classification Societies. In agreeing to classify the vessel, BV Marine ensured to Marlow Sales that the condition of the vessel would be in conformity with published standards established by the Society and international safety standards. Marlow Sales alleges that BV Marine was fully aware that the classification was a prerequisite to its sale of the vessel to Kakawi. BV Marine reviewed the design of the vessel during and after its construction to verify compliance, and it represented to Marlow Sales that the vessel met classification. On November 22, 2011, BV Marine issued an Attestation certifying that the vessel's class was maintained and there was no recommendation affecting the class. By issuing this class certification, BV Marine ensured and represented to Marlow Sales that the vessel complied with the Society's rules and standards. Marlow Sales relied on the statements, representations, and certificates issued by BV Marine. And, in turn, BV Marine's assurances guided Marlow Sales to close the sale on the vessel and complete the transaction with Kakawi on or about December 1, 2011. After the closing on the vessel, numerous alleged deficiencies on the vessel were found, calling into question BV Marine's classification. The alleged defects predated BV Marine's confirmation that the vessel was classed in accordance with the rules and international safety conventions. Thus, it is alleged that BV Marine performed negligent inspections and surveys and issued negligent certifications, in addition to making numerous misstatements to Marlow Sales. By the allegations, BV Marine was aware or should have been aware of the alleged deficiencies at the time the class certificate was issued. Without BV Marine's certification of the vessel, Marlow Sales would not have sold the vessel to Kakawi. It seeks damages and/or indemnification for any damages assessed against it on Plaintiff's claims. (*See* Doc. 159).

During the pendency of this suit, Bureau Veritas, S.A. commenced arbitration proceedings against Marlow Yachts, Ltd. ("Marlow Yachts"), the builder of this yacht, in London, England pursuant to an arbitration clause in the agreement to class this yacht. By correspondence dated June 18, 2014, British counsel for Bureau Veritas, S.A., asserted that the claims made in the Third Party Complaint also

Walser, an English Solicitor, with supporting exhibits. (Docs. 188–5 to 188–8).

were subject to arbitration in London pursuant to a provision of the Request for Classification ("Request for Classification" or "the agreement") between Bureau Veritas, S.A. ("Bureau Veritas" or "BV S.A."), and Marlow Yachts, Ltd. ("Marlow Yachts"), and/or Norsemen Shipyard, Ltd., the builder of the vessel.[3] (*See* Doc. 185–1). That agreement incorporates certain Marine Division—General Conditions, in which Article 12.3 provides that the contract between Bureau Veritas and its client is governed by English law and that disputes over the services of the Society are exclusively submitted to arbitration before three arbitrators in London. (*Id.*; Doc. 188–8).

On June 20, 2014, BV Marine filed a Motion to Dismiss or Stay and Compel Arbitration. (Doc. 172). By the motion, BV Marine seeks an order compelling Marlow Sales to arbitrate it third-party claims in London in accordance with Article 12.3 of the General Conditions.

Marlow Sales disputes the existence of a written contract between BV Marine and either itself or Marlow Yachts. (*See* Docs. 182, 185–2). Accordingly, it argues that it is not bound to any arbitration provision within the agreement. In the event that the contract would bind Marlow Yachts,

Marlow Yachts has not taken any action that would trigger the arbitration provision, as it is Marlow Sales that has brought the Third Party Complaint against BV Marine, not Marlow Yachts. (Docs. 182, 185–2).

## I.

By its Motion (Doc. 185), Marlow Sales seeks a preliminary injunction to stay, enjoin, or stop the London arbitration and from commencing such proceedings in London.[4] As a basis for this request, Marlow Sales argues that injunctive relief is proper since it is not a party to nor bound by any agreement to arbitrate and neither is Marlow Yachts. Thus, it is substantially likely to prevail on that issue.[5] Moreover, case law supports that a movant suffers irreparable harm when it is forced to expend time and resources arbitrating an issue that is not arbitrable and for which any award would not be enforceable.[6] In particular, citing to *Morgan Keegan*, Marlow Sales argues that in balancing the harms, a defendant would only suffer a delay in arbitration compared to the plaintiff's harm from participating in a forced arbitration. 829 F.Supp.2d 1141, 1154. In addition, Marlow Sales argues that BV Marine's claim that whether the parties

---

**3.** This argument is detailed in BV Marine's Motion to Dismiss or Stay and Compel Arbitration, or, in the Alternative, to Sever the Third Party Complaint Against Third Party Defendant, Bureau Veritas Marine Inc. (Doc. 172), which is also pending before the Court. The Court has addressed this motion by separate Order.

**4.** As in its response to the motion to stay or compel arbitration (Doc. 182), Marlow Sales draws no distinction between BV Marine and BV S.A. While somewhat confusingly argued, Marlow Sales' motion seeks both an injunction barring the ongoing arbitration and barring BV Marine's efforts to compel the third-party claims to arbitration there as well.

**5.** In support, Marlow Sales cites to *Allstate Ins. Co. v. Elzanaty*, 929 F.Supp.2d 199, 221 (E.D.N.Y. 2013); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113 (2d Cir. 2011); and *Morgan Keegan & Co. v. Shadburn*, 829 F.Supp.2d 1141 (M.D. Ala. 2011). (Doc. 185 at 5–7).

**6.** Marlow Sales cites to *Morgan Keegan* 829 F.Supp.2d at 1153; *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *Chase Manhattan Bank USA, N.A. v. Nat'l Arbitration Council, Inc.*, No. 3:04cv1205, 2005 WL 1270504, at *3 (M.D. Fla. May 27, 2005). (Doc. 185 at 7).

are bound to arbitrate can be decided by the arbitrator is incorrect because it is an issue for judicial determination.[7] Thus, Marlow Sales argues that it fulfills all four prongs of the preliminary injunction standard in that it has a substantial likelihood of success on the merits, the irreparable injury to Marlow Sales caused by forcing it into arbitration outweighs whatever damage the proposed injunction may cause the opposing party, and the injunction would not be adverse to the public interest as there is a strong public interest in not binding parties to arbitration when there is no arbitration agreement. In the alternative, Marlow Sales argues that injunctive relief is proper under the All Writs Act, as a court may enjoin arbitration proceedings in order to protect its jurisdiction.[8]

In response, BV Marine first identifies the various BV entities involved in some aspect of the classification of the vessel here in dispute. (Doc. 188 at 2). Bureau Veritas or BV S.A., is a French limited company with principal offices located in France. It is an international classification society that establishes rules relating to surveys of oceangoing vessels during and after construction. Its branch office in Dubai reviewed and approved the design of the vessel at issue in this suit, the M/V Kakawi. Its branch office in Taiwan periodically surveyed the vessel during construction. It identifies BV Marine, Inc., a Delaware corporation with principal offices in in Port Everglades, Florida, as an indi-

rect subsidiary of BV S.A. BV S.A. denies that it has offices in the United States and that it directly conducts inspections of vessels in the U.S. Rather, such classification functions are performed by BV Marine on its behalf. *Id.* Citing to declarations from the Marlow entities, BV Marine identifies Marlow Yachts as a Bermudan corporation engaged in the business of manufacturing yachts with a principal place of business in Palmetto, Florida. Marlow Sales is a Florida corporation selling Marlow Yachts also with a principal place of business in Palmetto, Florida. *Id.* The arbitration proceeding already pending in London was commenced by BV S.A. against Marlow Yachts.

BV Marine argues that there is no factual or legal basis to support the claim for injunctive relief.[9] In short, the London arbitration Marlow Sales seeks to enjoin involves two entities that are not parties to the Third Party Complaint and involves claims separate and distinct from those asserted in this Court. Thus, to the extent that Marlow Sales seeks injunctive relief against the ongoing proceedings in London, it has no basis to seek such relief in this proceeding. Moreover, it argues, as BV S.A. and Marlow Yachts are the parties before the London arbitrator and are not before this Court in the third party proceedings, the determination as to whether or not Marlow Yachts is subject to arbitration is, under English law, a decision to be made by the arbitrator or an

---

**7.** In support, Marlow Sales cites to *AT&T Mobility LLC v. Bushman*, 11–80922–CIV, 2011 WL 5924666, at *1 (S.D. Fla. Sept. 23, 2011); *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); and *Milan Exp. Co., Inc v. Applied Underwriters Captive Risk Assur. Co.*, 993 F.Supp.2d 846 (W.D. Tenn. 2014). (Doc. 185 at 8–9).

**8.** Marlow Sales cites to *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F.Supp.2d 1290, 1323–24 (S.D. Fla. 2008); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109–1110 (11th Cir. 2004); *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359–60 (5th Cir. 1978). (Doc. 185 at 11–13).

**9.** BV Marine's response primarily addresses the ongoing arbitration in London.

English court.[10]

BV Marine contends that Marlow Sales has failed to meet the high burden that would warrant a preliminary injunction. Contrary to Marlow Sales' contentions, Marlow Yachts, as the builder of the yacht in question, is bound by the arbitration provision in the Request for Classification. Marlow Sales demonstrates no right to enjoin BV S.A. from seeking arbitration under the agreement and it lacks standing to act in Marlow Yachts stead. Nor can Marlow Sales demonstrate that it will suffer irreparable harm in the absence of an injunction. Stated otherwise, a preliminary injunction is not necessary to preserve Marlow Sales' cause of action, nor can it show that its claims would receive unfair or incompetent treatment in arbitration. In balancing the harms, Marlow Sales' claims against BV Marine would not be affected by a refusal to enjoin the London arbitration. On the other hand, issuing the injunction would allow Marlow Yachts to avoid its contractual obligations to BV S.A., while enabling it to prosecute, through Marlow Sales, extra-contractual claims that should have been raised in arbitration by the real party in interest. Lastly, it urges that arbitration is in the public interest when the parties have agreed to arbitrate. As for Marlow Sales' argument under the All Writs Act, BV Marine argues that such is misplaced. BV Marine cites to *Schiavo ex rel Schindler v. Schiavo*, 403 F.3d 1223 (11th Cir. 2005) in support of the contention that where the relief sought is a preliminary injunction, the All Writs Act is not available because other remedies exist at law, namely Fed. R. Civ. P. 65. (Doc. 188 at 11–12).

## II.

 Rule 65 of the Federal Rules of Civil Procedure governs the entry of a preliminary injunction. The purpose of a preliminary injunction is to maintain the *status quo* until the court can enter a final decision on the merits of the case. *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). A party seeking entry of a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011).

## III.

 Upon consideration, Marlow's **Emergency Motion Seeking Preliminary Injunction and/or Motion to Stay, Enjoin, or Stop Arbitration Proceedings** (Doc. 185) is **DENIED**. First, neither party to the Third Party Complaint—Marlow Sales nor BV Marine—are parties to the London arbitration, and Marlow Sales appears wholly without standing to contest that proceeding. Even accepting in the circumstances of this case that the Court is empowered to enjoin the arbitration initiated by a non-party to this suit by reason of its legal relationship with BV Marine, exercise of such authority appears inappropriate and improvident in the circumstances. Moreover, given the standard ap-

---

**10.** In support, BV Marine files the Declaration of Nicholas Martin Walser, the English solicitor for Bureau Veritas. (Doc. 188–8). Mr. Walser cites to section 30 of the Arbitration Act of 1996 under English law, which pro-

vides that the dispute as to the existence or applicability of an arbitration agreement falls within the jurisdiction of the arbitral tribunal appointed under such agreement. *Id.* at 4.

plicable to preliminary injunctive relief, on the record before the Court, Marlow Sales is not substantially likely to prevail on the claim that Marlow Yachts may not be compelled to arbitrate in London disputes over services provided to it by BV S.A. As recognized in the parties' briefs, federal policy favors arbitration and the Court is without discretion to deny such where there is a valid arbitration agreement. Such appears to be the case here as between BV S.A. and Marlow Yachts. While the proffered evidence reveals that Marlow Yachts was not a signatory to the Request for Classification agreement(s), the agreement was clearly procured by Norsemen Shipyard on its behalf as the builder of this yacht. Moreover, as discussed in more detail in this Court's Order on BV Marine's motion to compel arbitration, Marlow Yachts is hard-pressed to deny the obligations of the agreement given the direct benefit it received by way of the agreement.

To the extent that the Motion seeks to enjoin BV Marine from seeking to compel arbitration of the third-party claims, Marlow Sales is not substantially likely to prevail on that claim either. As discussed in greater detail in the Order on BV Marine's motion to compel arbitration, the claims asserted in the Third Party Complaint all derive from the underlying agreement between BV S.A. and the builder of this yacht. While not an original signatory to the agreement, Marlow Yachts ultimately confirmed its role as the builder of this yacht and was the true client of Bureau Veritas under the Request for Classification. The representations and actions allegedly undertaken by BV Marine were all undertaken to fulfill BV S.A.'s obligations under that agreement. The arbitration provision in that agreement is broadly worded to encompass disputes over the services of the Society.

While Marlow Sales claims that it has avoided the obligation to arbitrate disputes over the services of BV S.A. by suing only BV Marine, its claims derive from that agreement and the obligations of Bureau Veritas thereunder. As determined on the accompanying motion to compel arbitration, Marlow Sales cannot claim the benefits of the agreement and at the same time avoid the obligations thereunder.

Moreover, Marlow Sales does not demonstrate irreparable harm to its interests in the event injunctive relief is denied. Its claims that BV Marine failed in its obligations to properly classify the M/V Kakawi yacht and that BV Marine made negligent and/or false representations which induced Marlow Sales to close on the sale of this yacht to its detriment are no less amenable to a fair and proper resolution in arbitration than in this court. The conclusion is likewise regarding Marlow Sales' claim for indemnification.

Given the proarbitration preference under both federal and State law, the imposition of an injunction in these circumstances would disserve the public interest. While arbitration in London may be inconvenient to Marlow Yachts and other of the Marlow entities, such is what they agreed to or are precluded from denying.

**Done and Ordered** in Tampa, Florida, this 3rd day of October 2014.