ANDERSON, Justice
(dissenting).
The word “voluntary,”- as used in the voluntary-recreational-program exception, Minn.Stat. § 176.021, stibd. 9 (2014), is unambiguous and has one reasonable plain meaning. But that reasonable plain meaning is not followed by the court’s decision. Under the court’s definition, a program is “voluntary” only if it is attended “willingly and without constraint or expectation of reward.” And as applied by the court, the alternatives to program attendance provided by Rosemount — taking paid leave or unpaid leave — are “constraints” on “pay or benefits” such that attendance is involuntary. This is not a reasonable plain meaning for two reasons.
*297 First, under ■ a plain-language analysis, the meaning of a term cannot depend solely on a selected dictionary entry considered in isolation; rather, the relevant meaning also depends on the.context in which the term is used. State v. Nelson, 842 N.W.2d 483, 437-38 & n. 2 (Minn.2014). Moreover, just because a selected definition “encompass[es] one sense.of a word does not establish that the word is ordinarily understood in , that, sense.” Taniguchi v. Kan Pac. Saipan, Ltd., — U.S.—, —, 132 S.Ct. 1997, 2003, 182 L.Ed.2d 903 (2012). .A definition of “voluntary” that prohibits any “constraint” on “pay or benefits” is an unreasonably narrow reading in the context of this statute. The plain and ordinary meaning of “voluntary” is much broader. Many prominent dictionaries define “voluntary” broadly as an. “act of choice.” Most choices involve some incentive or disincentive, advantage or disadvantage, but that does not mean the choice is implicitly coerced, such that it was involuntary. And second, although this is our first occasion to address the plain meaning of “voluntary” under this statute, several analogous and persuasive precedents support a broader plain meaning of “voluntary,”, rather than the restrictive definition adopted by the court.
- In short, the only reasonable meaning of a “voluntary” recreational program in the context of Minn.Stat. § 176.021, subd. 9, is one that is attended without coercion by the employer and by an employee’s act of choice among reasonable- alternatives. Here, Rosemount’s recreational program was “voluntary” because Rosemount did not coerce Shire into attending and Shire made the choice to attend after being presented with reasonable alternatives. For these reasons, I respectfully dissent.
I.
The Minnesota Workers’ Compensation Act, Minh.Stat. "§§ 176.001-.862 (2014), does- not define the word “voluntary.” See MinmStat. § 176.011. In the absence of statutory definitions, we interpret the words in a statute according to their plain and ordinary meaning. 500, LLC v. City of Minneapolis, 837 N.W.2d 287, 290-91 (Minn.2013); See Minn.Stat. § 645.08(1) (2014) (requiring that statutory words be construed “according to their common and approved usage”). We have considered dictionary definitions as a helpful tool in determining plain and ordinary meaning. See, e.g., Nelson, 842 N.W.2d at 437-38 & n. 2; State v. Carufel, 783 N.W.2d 539, 542 (Minn.2010); State v. Heiges, 806 N.W.2d 1, 15 (Minn.2011). But in drawing the relevant meaning of words from dictionaries, we must consider the context of the statute and the application of those words to the statute. Nelson, 842 N.W.2d at 437-38 & n. 2 (“The dissent[ ] ..; overlooks the basic principle that the relevant definition of a term depends on the context in which the term is used.”) (citing Carden v. Salazar, 555 U.S. 379, 391, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009); Deal v. United States, 508 U.S. 129, 132, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993)); see also Minn.Stat. § 645.16 (2014) (“When the words of 'a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded.... ” (emphasis added)).
Many dictionaries define- “voluntary” broadly by referring to free will, willingness, intention, and acts of choice, rather than the absence of “constraints.” Such a broad definition is usually listed first.[1] See *298 Webster’s Third New International Dictionary Unabridged 2564 (3d ed.2002) (“1 a: proceeding from the will: produced in or by an act of choice ... b: performed, made, or given of one’s own free will”-); Merriamr-Webster’s Collegiate Dictionary 1402 (11th ed.2003) (“1: proceeding from the will or from one’s own choice or consent”); Black’s Law Dictionary 1605,(8th ed.2004) (“1. Done by design or intention”); The American Heritage Dictionary of the English Language 1941-42 (5th- ed.2011) (“1. Done or undertaken of one’s own free will: a voluntary decision to leave the job.”)-, Oxford Dictionary of English 1990 (3d ed.2010) (“1 done, given, or acting of one’s own free will”); New Oxford American Dictionary 1938 (3d ed.2010) (“done, given, or acting of one’s own free will” (listed as the first sense)).
By contrast, the language relied on by the court, which prohibits “constraints” and “influences,” originates from lower-listed dictionary entries See Webster’s Third New International Dictionary Unabridged 2564 (3d ed.2002) (“e: acting of oneself: not constrained, impelled, or influenced by another: spontaneous, free”); Merriam-Webster’s Collegiate Dictionary 1402 (11th ed.2003) (“2: unconstrained by interference”); Black’s Law Dictionary 1605 (8th ed.2004) (“2. Unconstrained by interference; not impelled by outside influence”); The American Heritage Dictionary of the English Language 1941-42 (5th ed.2011) (“2. Acting or done willingly and without constraint or expectation of reward”). Indeed, two prominent dictionaries do not include any senses of “voluntary” that require the absence of “constraints” or “influences.” See Oxford Dictionary of English 1990 (3d ed.2010); New Oxford American Dictionary 1938 (3d ed.2010).
Even without considering the ordering of definitions, the Relevant meaning to draw from a dictionary depends on the context of the statute an'd the applicability of that meaning to this case. In other words, the goal is not to determine the meaning of “voluntary” generally, in all situations, but rather the plain and ordinary meaning of “voluntary” as- applied to this specific statute and to the facts of this case. Nelson, 842 N.W.2d at 437-38 & n. 2; see MifimStat. § 645.16.
In the context of this statute, there will almost always be some incentive to attend an employee-sponsored recreational program; indeed, an employer presumably designs such a program because it has a business-related goal that is advanced by employee participation. Employees may desire to attend because a program is fun and provides opportunities to bond with coworkers. Employees may desire to attend because they will receive performance rewards, such as certificates of achievement or'other types'of recognition for their performance. The employer may encourage employees to attend because there will be beneficial activities, such as training, skill development, and team-building exercises. And, often, as here, the program may take place during normal work hours and involve the payment of regular wages. Conversely, there may be disadvantages to being absent because the em *299 ployee will miss out on some of the above benefits. And if the program was scheduled during work hours, an absent employee may need to use some type of paid or unpaid leave. But none of the above examples of incentives or disincentives for attending a recreational program, without more, can reasonably amount to coercion such that an employee’s free will is overborne and the choice to attend, is involuntary. Such a conclusion'does not comport with the plain and reasonable meaning of “voluntary” according, to relevant dictionary definitions, and according to the context of this statute and the facts. of this case.
II.
In addition to dictionary definitions and the context of the statute, we may consider precedent that has established the meaning of words in analogous contexts. See 500, LLC, 837 N.W.2d at 290-91 (determining the meaning of “relating to” and “zoning” by citing definitions adopted in other cases); Odunlade v. City of Minneapolis, 823 N.W.2d 638, 644 (Minn.2012) (“We have defined ‘assessment’ broadly.. ...” (citing cases)); see also State v. Campbell, 814 N.W.2d 1, 8 (Minn.2012) (Stras, J., dissenting) (“[0]ur case law has consistently reached the same conclusion [that the term ‘offense’ includes misdemeanors.]” (citing cases)). Three areas of analogous criminal cases are helpful in considering the meaning of “voluntary” acts: (1) voluntary intoxication; (2) voluntary confessions; and (3) voluntary guilty pleas. In addition, these cases are helpful in their discussion of “coercion,” which is relevant to the court’s central holding that Shire was “implicitly coerced” to. attend Rosemount’s recreational program.
Voluntary Intoxication. In State v. Fearon, 283 Minn. 90, 91, 166 N.W.2d 720, 721 (1969), we considered the ordinary meaning of “voluntary” in the context of a now-repealed statute defining the crime of drunkenness: “Every person who becomes intoxicated by voluntarily drinking intoxicating liquors is. guilty of the crime of drunkenness;... ” Minn.Stat. § 340,96 (1968) (repealed 1971).- . We determined that the “ordinary meaning of the word ‘voluntary’ is ‘produced in or by an act of choice’ or of one’s own free will,” Fearon, 283 Minn. at 95, 166 N.W.2d at 723 (quoting Webster’s Third New ’ International Dictionary 2564 (1961)), and that the meaning of the' phrase- “voluntarily drinking” in the statute was “drinking by choice,” id. We did not cite any other dictionary definitions that prohibit “constraints” or “influences.” We concluded that the drinking by the defendant, who suffered from the disease of chronic alcoholism, was not voluntary because he was “no more able to make a free choice as to when or how much he would drink than a person would be who is forced to drink under threat of physical violence.” Id. at 96-97, 166 N.W.2d at 724.
Voluntary Confessions. If a defendant moves to suppress an allegedly involuntary confession, the state has the burden to prove the confession was “voluntary.” Doan v. State, 306 Minn. 89, 91, 234 N.W.2d 824, 826 (1975). We have held that a confession' is involuntary only if the defendant’s “will-was overborne and his capacity for self-determination critically impaired by coercive police conduct.” State v. Thaggard, 527 N.W.2d 804, 810 (Minn.1995) (emphasis added) (citing Colorado v. Spring, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987)); see also United States v. Williams, 760 F.3d 811, 815-16 (8th Cir.2014). In other words, “[c]oercive police activity is a necessary predicate to a finding that a statement is involuntary” and “[t]he question is whether the defendant’s will was overborne,” State v. Riley, 568 N.W.2d 518, 525 (Minn. *300 1997). As these cases indicate, the meaning of “voluntary” in this context does not require the absence of influences or constraints. Rather, a confession is involuntary only if-the defendant’s will is overborne and his capacity for self-determined decisions is critically impaired by coercive conduct,
Voluntary Guilty Pleas, A guilty plea is unconstitutional if it is not voluntary. See Brady v. United States, 897 U.S. 742, 749-55, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). But a guilty plea does not become involuntary merely because the state “encourages,” “influence^,” .or “motivated” a plea, through the benefit pf a lesser penalty in the plea bargain and the constraint of a higher penalty at trial. Id. at 749-52, 90 S.Gt. 1463. Rather, a guilty plea is involuntary only if it is produced by “coercion overbearing the will of the defendant.” Id. at 750, 90 S.Ct. 1463; see State v. Ecker, 524 N.W.2d 712, 719 (Minn.1994) (“Although the government may not produce a plea through actual or threatened physical harm, or by mental coercion ‘overbearing the will of the defendant,’ a defendant’s motivation to avoid a more serious penalty or set of charges will not invalidate a guilty plea.”). For example, a plea decision may be “voluntary” even if a motivating influence is particularly strong, see e.g., Brady, 397 U.S. at 754-55, 90 S.Ct. 1463 (holding that a guilty plea was not involuntary “because [it was] entered to avoid the possibility of a death penalty” as the defendant had a “full opportunity, to assess the advantages and disadvantages of a trial as compared with those attending a plea of guilty”), and even if the alternatives to a decision are unattractive, see, e.g., State v. Raleigh, 778 N.W.2d 90, 96 (Minn.2010) (concluding that a plea bargain to receive one life sentence instead of multiple, although “illogical,” was not involuntary because the facts “show[ed] acceptance and understanding of- the plea, not improper pressure or coercion.”).
I recognize these examples are drawn from our criminal law and are not directly applicable here; that said, and recognizing the differences between “voluntary” in the context of workers’ compensation law and in criminal law, it is noteworthy and instructive that we have applied a broader meaning to “voluntary” in a context in which there is a strict constitutional standard protecting'the rights of criminal defendants. No such barrier exists here, and yet the- court applies a meaning to “voluntary” that is much narrower. Why we should do this, given the plain language of the statute, dictionary definitions, and the broader meanings of “voluntary” applied elsewhere, the court does not say.
III.
These dictionary definitions and analogous precedents indicate that the’plain and ordinary meaning of a “voluntary” recreational program, Minn.Stat. § 176.021, subd. 9, does not require the absence of all influences or constraints; rather, such external influences prevent a voluntary decision only if they amount to coercion that critically impairs willfulness and the capacity for self-determination. The most natural and common reading of a “voluntary” recreational program under this statute is one attended without coercion by the employer and by an employee’s act of choice among reasonable alternatives.
This plain meaning, focusing on an “act of choice,” is persuasively supported by similar workers’ compensation cases. In Ellingson v. Brady Corp., 66 Minn. Workers’ Comp. Dec. 27 (WCCA 2005), aff'd without opinion, 707 N.W.2d 676 (Minn.2006), the WCCA concluded that because “the employee had options ” besides attending the employer-sponsored recreational program, “his choice to attend” was *301 voluntary. Id. at 31 (emphasis added). The employee’s options included remaining at work with pay, taking a day of paid vacation,-or taking a day> off without pay. Id. This choice was voluntary even though the options were not equally attractive and the employee may have had incentives, .for picking one option over the others. Even if an employee, prefers to receive wages, rather than use paid vacation hours .or take unpaid leave, requiring an employee to choose among reasonable options does not amount to coercion. Thus, when the employee in Ellingson argued that his attendance was involuntary because the employer, encouraged his presence by paying him, the court rejected that argument because the employee had “options” and it was “his choice” to attend. Id. at 30-31. Similarly, in Sager v. City of Roseville, 52 Minn. Workers’ Comp. Dec. 281, 283 (WCCA 1994), aff'd without opinion, 529 N.W.2d 701 (Minn.1995), the WCCA held that “employees are not excluded from the exemption of Minn.Stat. § 176.021, subd. 9, simply [because] they are being paid a wage by the etaployer.”[2]
In Paskett v. Imation Corp., No. WC12-5494, 2013 WL 398699 (Minn. WCCA Jan. 3, 2013), the WCCA concluded that the employer’s recreational program was voluntary because the employee made the choice between the alternatives of staying at work and taking paid leave. Id. at *2. The court rejected the employee’s argument that his participation was involuntary because he did not. have the option of unpaid leave, which-was provided by the employer in Ellingson. Id. The court explained that “Ellingson cannot ... be read to mandate that all of these specific alternatives be available in every case.” Id. Rather, the employee “acknowledged ... that he was not required or coerced by the employer to take part in the flag football game and that he could have, stayed at wprk. or taken paid leave instead. As such, the record as a whole easily supports ... the voluntary nature of the employee’s participation.” Id. (emphasis added). The unifying principle of Paskett and Ellingson is that a program is “voluntary” under Minn.Stat. § 176.021, subd. 9, if the employee makes a “choice” to attend among reasonable “options” or “alternatives,” and the employee is “not coerced by the employer” to attend. This principle falls in line with the reasonable plain meaning of “voluntary” drawn from dictionaries, analogous case law, and the context of the statute here, as discussed above.
Similarly here, Shire made a choice among reasonable alternatives presented by his employer, including (1) attending Rosemount’s employee-recognition program and receiving regular wages; (2) tak-mg paid leave by using vacation hours; *302 and (3) taking unpaid leave. And there is no evidence that Rosemount coerced Shire to attend or took any action that looked remotely like coercion. Rather, evidence exists that Shire attended the program voluntarily by making his own choice. Rosemount’s electronic employee handbook states that “recognition events are voluntary in purpose and all employees have the choice to decide to participate;” In addition, Rosemount held several employee meetings, prior to the recreational program, in which the employees were advised of the voluntary nature of the event, presented with the alternatives of paid or unpaid leave, and advised to contact their supervisor if they did not wish to attend. But Shire never told his supervisor that he did not wish to attend the event, nor did he ever request not to attend the event. Indeed, there was no evidence that Shire told anyone he did not want to attend or that he felt “coerced” to attend by his employer. When Shire was asked during his deposition, “you had no reason not to attend the event?” Shire responded, “None that I can think of.”
But despite this clear evidence that Shire attended the program voluntarily, the court nevertheless presumes that Shire must have been “implicitly coerced” to attend. The only basis for the court’s con-elusion that Shire was “implicitly coerced” is that, among the options available to Shire — attend the program with regular wages, take paid leave by using vacation hours, or take unpaid leave — there was a financial disincentive or “constraint” in favor of attending the program. See supra at 292 (“Contrary to these definitions, employees were ‘constrained’ by the fact that attendance at the employee-recognition event was the only means by which they could obtain their wages without expending limited vacation time,”).
The court’s decision does not follow the reasonable plain meaning of “voluntary” under Minn.Stat. § 176.021, subd. 9. Restricting the definition of this term to prohibit any “constraint” on “pay or benefits,” and raising a presumption of “implied coercion” based on incentivized alternatives, without any direct evidence that an employee was actually coerced, contravenes the plain meaning of “voluntary” according to relevant dictionary definitions, the context of the statute, and analogous precedent. I would hold that the reasonable plain meaning of a “voluntary” recreational program under this statute is one that is' attended without coercion by the employer and by the employee’s act of choice among reasonable alternatives. Because Shire attended Rosemount’s program by making a choice among reasonable alternatives,. including the options of paid leave by using vacation hours or. unpaid leave, arid because there was no evidence of coercion by Rosemount, implied or otherwise, Shire’s attendance was voluntary and therefore his injury was non-compensable under the voluntary-recreational-program exception, Minn.Stat. § 176.021, subd.' 9, to the Minnesota Workers’ Compensation Act. "For these reasons, I respectfully dissent.

. Although the court cites one definition of "voluntary” that refers to the absence of a "reward,” the court does not rely on this part of the definition in its analysis. It is telling that the court does not do so, because requiring the absence of "rewards” would result in an unreasonably narrow meaning of "voluntary,” and would conflict with Ellingson and Sager, in which the WCCA held that an employer's payment of wages does not result in involuntary attendance, Similarly here, Rosemount arguably provided a financial "reward” or incentive to attend its program through the payment of regular wages to the program’s attendees. But the court does not rely on .this financial “reward” to support its conclusion that Rosemount’s program was involuntary and Shire was "implicitly coerced” to attend. Thus, it appears that the court would agree that, consistent with the WCCA’s holdihgs in Ellingson and Sager, a reasonable "reward” or financial incentive to attend, through the payment of regular wages, does not result in involuntary attendance, But the court does not explain how the converse of this rule, a reasonable "constraint” or financial disincentive to be absent (by providing the options of using paid vacation hours or taking unpaid leave) results in involuntariness.