Justice Thomas
delivered the opinion of the Court.
The Indian Reorganization Act (IRA or Act) authorizes the Secretary of the Interior, a respondent in this case, to acquire land and hold it in trust “for the purpose of providing *382 land for Indians.” §5, 48 Stat. 985, 25 U. S. C. §465. The IRA defines the term “Indian” to “include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction.” §479. The Secretary notified petitioners — the State of Rhode Island, its Governor, and the town of Charlestown, Rhode Island — that he intended to accept in trust a parcel of land for use by the Narragansett Indian Tribe in accordance with his claimed authority under the statute. In proceedings before the Interior Board of Indian Appeals (IBIA), the District Court, and the Court of Appeals for the First Circuit, petitioners unsuccessfully challenged the Secretary’s authority to take the parcel into trust.
In reviewing the determination of the Court of Appeals, we are asked to interpret the statutory phrase “now under Federal jurisdiction” in §479. Petitioners contend that the term “now” refers to the time of the statute’s enactment, and permits the Secretary to take land into trust for members of recognized tribes that were “under Federal jurisdiction” in 1934. Respondents argue that the word “now” is an ambiguous term that can reasonably be construed to authorize the Secretary to take land into trust for members of tribes that are “under Federal jurisdiction” at the time that the land is accepted into trust.
We agree with petitioners and hold that, for purposes of § 479, the phrase “now under Federal jurisdiction” refers to a tribe that was under federal jurisdiction at the time of the statute’s enactment. As a result, §479 limits the Secretary’s authority to taking land into trust for the purpose of providing land to members of a tribe that was under federal jurisdiction when the IRA was enacted in June 1934. Because the record in this case establishes that the Narragansett Tribe was not under federal jurisdiction when the IRA was enacted, the Secretary does not have the authority *383 to take the parcel at issue into trust. We reverse the judgment of the Court of Appeals.
I
At the time of colonial settlement, the Narragansett Indian Tribe was the indigenous occupant of much of what is now the State of Rhode Island. See Final Determination for Federal Acknowledgement of Narragansett Indian Tribe of Rhode Island, 48 Fed. Reg. 6177 (1983) (hereinafter Final Determination). Initial relations between colonial settlers, the Narragansett Tribe, and the other Indian tribes in the region were peaceful, but relations deteriorated in the late 17th century. The hostilities peaked in 1675 and 1676 during the 2-year armed conflict known as King Philip’s War. Hundreds of colonists and thousands of Indians died. See E. Schultz & M. Tougias, King Philip’s War 5 (1999). The Narragansett Tribe, having been decimated, was placed under formal guardianship by the Colony of Rhode Island in 1709. 48 Fed. Reg. 6177, 6178.[1]
Not quite two centuries later, in 1880, the State of Rhode Island convinced the Narragansett Tribe to relinquish its tribal authority as part of an effort to assimilate tribal members into the local population. See Narragansett Indian Tribe v. National Indian Gaming Comm’n, 158 F. 3d 1335, 1336 (CADC 1998). The Tribe also agreed to sell all but two acres of its remaining reservation land for $5,000. Ibid. Almost immediately, the Tribe regretted its decisions and embarked on a campaign to regain its land and tribal status. Ibid. In the early 20th century, members of the Tribe sought economic support and other assistance from the Fed *384 eral Government. But, in correspondence spanning a 10-year period from 1927 to 1937, federal officials declined their request, noting that the Tribe was, and always had been, under the jurisdiction of the New England States, rather than the Federal Government.
Having failed to gain recognition or assistance from the United States or from the State of Rhode Island, the Tribe filed suit in the 1970’s to recover its ancestral land, claiming that the State had misappropriated its territory in violation of the Indian Non-Intercourse Act, 25 U. S. C. § 177.[2] The claims were resolved in 1978 by enactment of the Rhode Island Indian Claims Settlement Act, 92 Stat. 813, 25 U. S. C. § 1701 et seq. Under the agreement codified by the Settlement Act, the Tribe received title to 1,800 acres of land in Charlestown, Rhode Island, in exchange for relinquishing its past and future claims to land based on aboriginal title. The Tribe also agreed that the 1,800 acres of land received under the Settlement Act “shall be subject to the civil and criminal laws and jurisdiction of the State of Rhode Island.” § 1708(a); see also § 1712(a).
The Narragansett Tribe’s ongoing efforts to gain recognition from the United States Government finally succeeded in 1983. 48 Fed. Reg. 6177. In granting formal recognition, the Bureau of Indian Affairs (BIA) determined that “the Narragansett community and its predecessors have existed autonomously since first contact, despite undergoing many modifications.” Id., at 6178. The BIA referred to the Tribe’s “documented history dating from 1614” and noted that “all of the current membership are believed to be able to trace to at least one ancestor on the membership lists of the Narragansett community prepared after the 1880 Rhode *385 Island ‘detribalization’ act.” Ibid. After obtaining federal recognition, the Tribe began urging the Secretary to accept a deed of trust to the 1,800 acres conveyed to it under the Rhode Island Indian Claims Settlement Act. 25 CFR § 83.2 (2008) (providing that federal recognition is needed before an Indian tribe may seek “the protection, services, and benefits of the Federal government”). The Secretary acceded to the Tribe’s request in 1988. See Charlestown v. Eastern Area Director, Bur. of Indian Affairs, 18 IBIA 67,69 (1989).[3]
In 1991, the Tribe’s housing authority purchased an additional 31 acres of land in the town of Charlestown adjacent to the Tribe’s 1,800 acres of settlement lands. Soon thereafter, a dispute arose about whether the Tribe’s planned construction of housing on that parcel had to comply with local regulations. Narragansett Indian Tribe v. Narragansett Elec. Co., 89 F. 3d 908, 911-912 (CA1 1996). The Tribe’s primary argument for noncompliance — that its ownership of the parcel made it a “dependent Indian community” and thus “Indian country” under 18 U. S. C. § 1151 — ultimately failed. 89 F. 3d, at 913-922. But, while the litigation was pending, the Tribe sought an alternative solution to free itself from compliance with local regulations: It asked the Secretary to accept the 31-acre parcel into trust for the Tribe pursuant to 25 U. S. C. § 465. By letter dated March 6, 1998, the Secretary notified petitioners of his acceptance of the Tribe’s land into trust. Petitioners appealed the Secretary’s decision to the IBIA, which upheld the Secretary’s decision. See Charlestown v. Eastern Area Director, Bureau of Indian Affairs, 35 IBIA 93 (2000).
Petitioners sought review of the IBIA decision pursuant to the Administrative Procedure Act, 5 U. S. C. § 702. The *386 District Court granted summary judgment in favor of the Secretary and other Department of Interior officials. As relevant here, the District Court determined that the plain language of 25 U. S. C. § 479 defines “Indian” to include members of all tribes in existence in 1934, but does not require a tribe to have been federally recognized on that date. Carcieri v. Norton, 290 F. Supp. 2d 167, 179-181 (RI 2003). According to the District Court, because it is currently “federally-recognized” and “existed at the time of the enactment of the IRA,” the Narragansett Tribe qualifies “as an ‘Indian tribe’ within the meaning of §479.” Id., at 181. As a result, “the secretary possesses authority under § 465 to accept lands into trust for the benefit of the Narragansetts.” Ibid.
The Court of Appeals for the First Circuit affirmed, first in a panel decision, Carcieri v. Norton, 423 F. 3d 45 (2005), and then sitting en banc, 497 F. 3d 15 (2007). Although the Court of Appeals acknowledged that “[o]ne might have an initial instinct to read the word ‘now’ [in § 479] ... to mean the date of [the] enactment of the statute, June 18,1934,” the court concluded that there was “ambiguity as to whether to view the term ... as operating at the moment Congress enacted it or at the moment the Secretary invokes it.” Id., at 26. The Court of Appeals noted that Congress has used the word “now” in other statutes to refer to the time of the statute’s application, not its enactment. Id., at 26-27. The Court of Appeals also found that the particular statutory context of §479 did not clarify the meaning of “now.” On one hand, the Court of Appeals noted that another provision within the IRA, 25 U. S. C. § 472, uses the term “now or hereafter,” which supports petitioners’ argument that “now,” by itself, does not refer to future events. But on the other hand, §479 contains the particular application date of “June 18, 1934,” suggesting that if Congress had wanted to refer to the date of enactment, it could have done so more *387 specifically. 497 F. 3d, at 27. The Court of Appeals further reasoned that both interpretations of “now” are supported by reasonable policy explanations, id., at 27-28, and it found that the legislative history failed to “clearly resolve the issue,” id., at 28.
Having found the statute ambiguous, the Court of Appeals applied the principles set forth in Chevron U S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 843 (1984), and deferred to the Secretary’s construction of the provision. 497 F. 3d, at 30. The court rejected petitioners’ arguments that the Secretary’s interpretation was an impermissible construction of the statute. Id., at 30-34. It also held that petitioners had failed to demonstrate that the Secretary’s interpretation was inconsistent with earlier practices of the Department of the Interior. Furthermore, the court determined that even if the interpretation were a departure from the Department’s prior practices, the decision should be affirmed based on the Secretary’s “reasoned explanation for his interpretation.” Id., at 34.
We granted certiorari, 552 U. S. 1229 (2008), and now reverse.
II
This case requires us to apply settled principles of statutory construction under which we must first determine whether the statutory text is plain and unambiguous. United States v. Gonzales, 520 U. S. 1, 4 (1997). If it is, we must apply the statute according to its terms. See, e. g., Dodd v. United States, 545 U. S. 353, 359 (2005); Lamie v. United States Trustee, 540 U. S. 526, 534 (2004); Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U. S. 1, 6 (2000); Caminetti v. United States, 242 U. S. 470, 485 (1917).
The Secretary may accept land into trust only for “the purpose of providing land for Indians.” 25 U. S. C. §465. “Indian” is defined by statute as follows:
*388 “The term ‘Indian’ as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood. . . . The term ‘tribe’ wherever used in this Act shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation. ...” § 479 (emphasis added).
The parties are in agreement, as are we, that the Secretary’s authority to take the parcel in question into trust depends on whether the Narragansetts are members of a “recognized Indian Tribe now under Federal jurisdiction.” Ibid. That question, in turn, requires us to decide whether the word “now under Federal jurisdiction” refers to 1998, when the Secretary accepted the 31-acre parcel into trust, or 1934, when Congress enacted the IRA.
We begin with the ordinary meaning of the word “now,” as understood when the IRA was enacted. Director, Office of Workers’ Compensation Programs v. Greenwich Collieries, 512 U. S. 267, 272 (1994); Moskal v. United States, 498 U. S. 103, 108-109 (1990). At that time, the primary definition of “now” was “[a]t the present time; at this moment; at the time of speaking.” Webster’s New International Dictionary 1671 (2d ed. 1934); see also Black’s Law Dictionary 1262 (3d ed. 1933) (defining “now” to mean “[a]t this time, or at the present moment,” and noting that “ ‘[n]ow’ as used in a statute ordinarily refers to the date of its taking effect . . . ” (emphasis added)). This definition is consistent with interpretations given to the word “now” by this Court, both before and after passage of the IRA, with respect to its use in other statutes. See, e. g., Franklin v. United States, 216 U. S. 559, 568-569 (1910) (interpreting a federal criminal statute to have “adopted such punishment as the laws of the *389 State in which such place is situated now provide for the like offense” (citing United States v. Paul, 6 Pet. 141 (1832); internal quotation marks omitted)); Montana v. Kennedy, 366 U. S. 308, 310-311 (1961) (interpreting a statute granting citizenship status to foreign-born “children of persons who now are, or have been, citizens of the United States” (internal quotation marks omitted; emphasis added and deleted)).
It also aligns with the natural reading of the word within the context of the IRA. For example, in the original version of 25 U. S. C. § 465, which provided the same authority to the Secretary to accept land into trust for “the purpose of providing land for Indians,” Congress explicitly referred to current events, stating “[tjhat no part of such funds shall be used to acquire additional land outside of the exterior boundaries of [the] Navajo Indian Reservation ... in the event that the proposed Navajo boundary extension measures now pending in Congress . . . become law.” IRA, §5, 48 Stat. 985 (emphasis added).[4] In addition, elsewhere in the IRA, Congress expressly drew into the statute contemporaneous and future events by using the phrase “now or hereafter.” See 25 U. S. C. §468 (referring to “the geographic boundaries of any Indian reservation now existing or established hereafter”); §472 (referring to “Indians who may be appointed ... to the various positions maintained, now or hereafter, by the Indian Office”). Congress’ use of the word “now” in this provision, without the accompanying phrase “or hereafter,” thus provides further textual support for the conclusion that the term refers solely to events contemporaneous with the Act’s enactment. See Barnhart v. Sigmon Coal Co., 534 U. S. 438, 452 (2002) (“[W]hen Congress includes particular language in one section of a statute *390 but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion” (internal quotation marks omitted)).
Furthermore, the Secretary’s current interpretation is at odds with the Executive Branch’s construction of this provision at the time of enactment. In correspondence with those who would assist him in implementing the IRA, the Commissioner of Indian Affairs, John Collier, explained:
“Section 19 of the Indian Reorganization Act of June 18, 1934 (48 Stat. L., 988), provides, in effect, that the term ‘Indian’ as used therein shall include — (1) all persons of Indian descent who are members of any recognized tribe that was under Federal jurisdiction at the date of the Act . . . .” Letter from John Collier, Commissioner, to Superintendents (Mar. 7,1936), Lodging of Respondents (emphasis added).[5]
Thus, although we do not defer to Commissioner Collier’s interpretation of this unambiguous statute, see Estate of *391 Cowart v. Nicklos Drilling Co., 505 U. S. 469, 476 (1992), we agree with his conclusion that the word “now” in § 479 limits the definition of “Indian,” and therefore limits the exercise of the Secretary’s trust authority under § 465 to those members of tribes that were under federal jurisdiction at the time the IRA was enacted.
The Secretary makes two other arguments in support of his contention that the term “now” as used in § 479 is ambiguous. We reject them both. First, the Secretary argues that although the “use of ‘now’ can refer to the time of enactment” in the abstract, “it can also refer to the time of the statute’s application.” Brief for Respondents 18. But the susceptibility of the word “now” to alternative meanings “does not render the word . . . whenever it is used, ambiguous,” particularly where “all but one of the meanings is ordinarily eliminated by context.” Deal v. United States, 508 U. S. 129, 131-132 (1993). Here, the statutory context makes clear that “now” does not mean “now or hereafter” or “at the time of application.” Had Congress intended to legislate such a definition, it could have done so explicitly, as it did in §§468 and 472, or it could have omitted the word “now” altogether. Instead, Congress limited the statute by the word “now” and “we are obliged to give effect, if possible, to every word Congress used.” Reiter v. Sonotone Corp., 442 U. S. 330, 339 (1979).
Second, the Secretary argues that § 479 left a gap for the agency to fill by using the phrase “shall include” in its introductory clause. Brief for Respondents 26-27. The Secretary, in turn, claims to have permissibly filled that gap by defining “‘Tribe’” and “‘Individual Indian’” without reference to the date of the statute’s enactment. Id., at 28 (citing 25 CFR §§ 151.2(b), (c)(1) (2008)). But, as explained above, Congress left no gap in 25 U. S. C. § 479 for the agency to fill. Rather, it explicitly and comprehensively defined the term by including only three discrete definitions: “[1] members of any recognized Indian tribe now under Federal jurisdiction, *392 and [2] all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and ... [3] all other persons of one-half or more Indian blood.” Ibid. In other statutory provisions, Congress chose to expand the Secretary’s authority to particular Indian tribes not necessarily encompassed within the definitions of “Indian” set forth in § 479.[6] Had it understood the word “include” in § 479 to encompass tribes other than those satisfying one of the three §479 definitions, Congress would have not needed to enact these additional statutory references to specific Tribes.
The Secretary and his amici also go beyond the statutory text to argue that Congress had no policy justification for limiting the Secretary’s trust authority to those tribes under federal jurisdiction in 1934, because the IRA was intended to strengthen Indian communities as a whole, regardless of their status in 1934. Petitioners counter that the main purpose of § 465 was to reverse the loss of lands that Indians sustained under the General Allotment Act, see Atkinson Trading Co. v. Shirley, 532 U. S. 645, 650, n. 1 (2001), so the statute was limited to tribes under federal jurisdiction at that time because they were the tribes who lost their lands. We need not consider these competing policy views, because Congress’ use of the word “now” in §479 speaks for itself and “courts must presume that a legislature says in a statute what it means and means in a statute what it says there.” *393 Connecticut Nat. Bank v. Germain, 503 U. S. 249, 253-254 (1992).[7]
Ill
The Secretary and his supporting amici also offer two alternative arguments that rely on statutory provisions other than the definition of “Indian” in § 479 to support the Secretary’s decision to take this parcel into trust for the Narragansett Tribe. We reject both arguments.
First, the Secretary and several amici argue that the definition of “Indian” in § 479 is rendered irrelevant by the broader definition of “tribe” in §479 and by the fact that the statute authorizes the Secretary to take title to lands “in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired.” §465 (emphasis added); Brief for Respondents 12-14. But the definition of “tribe” in §479 itself refers to “any Indian tribe” (emphasis added), and therefore is limited by the temporal restrictions that apply to §479’s definition of “Indian.” See § 479 (“The term ‘tribe’ wherever used in this Act shall be construed to refer to any Indian tribe, organized band, pueblo, or the Indians residing on one reservation” (emphasis added)). And, although §465 authorizes the United States to take land in trust for an Indian tribe, § 465 limits the Secretary’s exercise of that authority “for the purpose of providing land for Indians.” There simply is no legitimate way to circumvent the definition of “Indian” in delineating the Secretary’s authority under §§465 and 479.[8]
*394 Second, amicus National Congress of American Indians (NCAI) argues that 25 U. S. C. § 2202, which was enacted as part of the Indian Land Consolidation Act (ILCA), Title II, 96 Stat. 2517, overcomes the limitations set forth in §479 and, in turn, authorizes the Secretary’s action. Section 2202 provides:
“The provisions of section 465 of this title shall apply to all tribes notwithstanding the provisions of section 478 of this title: Provided, That nothing in this section is intended to supersede any other provision of Federal law which authorizes, prohibits, or restricts the acquisition of land for Indians with respect to any specific tribe, reservation, or state(s).”
NCAI argues that the “ILCA independently grants authority under Section 465 for the Secretary to execute the challenged trust acquisition.” NCAI Brief 8. We do not agree.
The plain language of §2202 does not expand the power set forth in § 465, which requires that the Secretary take land into trust only “for the purpose of providing land for Indians.” Nor does §2202 alter the definition of “Indian” in § 479, which is limited to members of tribes that were under federal jurisdiction in 1934.[9] See supra, at 387-393. Rather, §2202 by its terms simply ensures that tribes may benefit from §465 even if they opted out of the IRA pursuant to *395 §478, which allowed tribal members to reject the application of the IRA to their tribe. § 478 (“This Act shall not apply to any reservation wherein a majority of the adult Indians ... shall vote against its application”). As a result, there is no conflict between §2202 and the limitation on the Secretary’s authority to take lands contained in §465. Rather, § 2202 provides additional protections to those who satisfied the definition of “Indian” in § 479 at the time of the statute’s enactment, but opted out of the IRA shortly thereafter.
NCAI’s reading of §2202 also would nullify the plain meaning of the definition of “Indian” set forth in § 479 and incorporated into §465. Consistent with our obligation to give effect to every provision of the statute, Reiter, 442 U. S., at 339, we will not assume that Congress repealed the plain and unambiguous restrictions on the Secretary’s exercise of trust authority in §§465 and 479 when it enacted §2202. “We have repeatedly stated . . . that absent ‘a clearly expressed congressional intention,’. .. [a]n implied repeal will only be found where provisions in two statutes are in ‘irreconcilable conflict,’ or where the latter Act covers the whole subject of the earlier one and ‘is clearly intended as a substitute.’ ” Branch v. Smith, 538 U. S. 254, 273 (2003) (plurality opinion) (quoting Morton v. Mancari, 417 U. S. 535, 551 (1974), and Posadas v. National City Bank, 296 U. S. 497, 503 (1936)).
IV
We hold that the term “now under Federal jurisdiction” in §479 unambiguously refers to those tribes that were under the federal jurisdiction of the United States when the IRA was enacted in 1934. None of the parties or amici, including the Narragansett Tribe itself, has argued that the Tribe was under federal jurisdiction in 1934. And the evidence in the record is to the contrary. 48 Fed. Reg. 6177. Moreover, the petition for writ of certiorari filed in this case specifically represented that “[i]n 1934, the Narragansett Indian Tribe . . . was neither federally recognized nor under the juris *396 diction of the federal government.” Pet. for Cert. 6. Respondents’ brief in opposition declined to contest this assertion. See Brief in Opposition 2-7. Under our rules, that alone is reason to accept this as fact for purposes of our decision in this case. See this Court’s Rule 15.2. We therefore reverse the judgment of the Court of Appeals.

It is so ordered.

 The Narragansett Tribe recognized today is the successor to two tribes, the Narragansett and the Niantic Tribes. The two predecessor Tribes shared territory and cultural traditions at the time of European settlement and effectively merged in the aftermath of King Philip’s War. See Final Determination, 48 Fed. Reg. 6178.

 Title 25 U. S. C. § 177 provides, in pertinent part, that “[n]o purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution.”

 The Tribe, the town, and the Secretary previously litigated issues relating to the Secretary’s acceptance of these 1,800 acres, and that matter is not presently before this Court. See generally Charlestown, 18 IBIA 67; Rhode Island v. Narragansett Indian Tribe, 19 F. 3d 685 (CA1 1994); Narragansett Indian Tribe v. Rhode Island, 449 F. 3d 16 (CA1 2006).

 The current version of §465 provides “[tjhat no part of such funds shall be used to acquire additional land outside of the exterior boundaries of Navajo Indian Reservation ... in the event that legislation to define the exterior boundaries of the Navajo Indian Reservation in New Mexico, and for other purposes, or similar legislation, becomes law.”

 In addition to serving as Commissioner of Indian Affairs, John Collier was “a principal author of the [IRA].” United States v. Mitchell, 463 U. S. 206, 221, n. 21 (1983). And, as both parties note, he appears to have been responsible for the insertion of the words “now under Federal jurisdiction” into what is now 25 U. S. C. § 479. See Hearings on S. 2755 et al.: A Bill to Grant to Indians Living Under Federal Tutelage the Freedom to Organize for Purposes of Local Self-Government and Economic Enterprise, before the Senate Committee on Indian Affairs, 73d Cong., 2d Sess., pt. 2, p. 266 (1934). Also, the record contains a 1937 letter from Commissioner Collier in which, even after the passage of the IRA, he stated that the Federal Government still lacked any jurisdiction over the Narragansett Tribe. App. 23a-24a. Commissioner Collier’s responsibilities related to implementing the IRA make him an unusually persuasive source as to the meaning of the relevant statutory language and the Tribe’s status under it. See Christensen v. Harris County, 529 U. S. 576, 587 (2000) (explaining that an Executive Branch statutory interpretation that lacks the force of law is “entitled to respect... to the extent that those interpretations have the ‘power to persuade’ ” (some internal quotation marks omitted)).

 See, e. g., 25 U. S. C. §473a (“Sections ... 465 ... and 479 of this title shall after May 1,1936, apply to the Territory of Alaska”); § 1041e(a) (“The [Shawnee] Tribe shall be eligible to have land acquired in trust for its benefit pursuant to section 465 of this title ... ”); § 1300b-14(a) (“[Sections 465 and 479 of this title are] hereby made applicable to the [Texas] Band [of Kickapoo Indians] . . . ”); § 1300g-2(a) (“[Sections 465 and 479] shall apply to the members of the [Ysleta del Ser Pueblo] tribe, the tribe, and the reservation”).

 Because we conclude that the language of §465 unambiguously precludes the Secretary’s action with respect to the parcel of land at issue in this ease, we do not address petitioners’ alternative argument that the Rhode Island Indian Claims Settlement Act, 92 Stat. 813,25 U. S. C. § 1701 et seq., precludes the Secretary from exercising his authority under § 465.

 For this reason, we disagree with the argument made by Justice Stevens that the term “Indians” in §465 has a different meaning than the definition of “Indian” provided in §479, and that the term’s meaning in §465 is controlled by later-enacted regulations governing the Secretary’s *394 recognition of tribes like the Narragansetts. See post, at 404-406, 409-411 (dissenting opinion). When Congress has enacted a definition with “detailed and unyielding provisions,” as it has in §479, this Court must give effect to that definition even when “fit could be argued that the line should have been drawn at a different point.’” INS v. Hector, 479 U. S. 85, 88-89 (1986) (per curiam) (quoting Fiallo v. Bell, 430 U. S. 787, 798 (1977)).

 NCAI notes that the ILCA’s definition of “tribe” “means any Indian tribe, band, group, pueblo, or community for which, or for the members of which, the United States holds lands in trust.” § 2201. But § 2201 is, by its express terms, applicable only to Chapter 24 of Title 25 of the United States Code. Ibid. The IRA is codified in Chapter 14 of Title 25. See § 465. Section 2201, therefore, does not itself alter the authority granted to the Secretary by § 465.