[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13400

_____

D.C. Docket No. 1:15-cv-00277-CG-C

POARCH BAND OF CREEK INDIANS,

Plaintiff-Counter Defendant-Appellee,

versus

JAMES HILDRETH, JR.,
in his official capacity as Tax
Assessor of Escambia County, Alabama,

Defendant-Counter Claimant-Appellant.
_____

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(July 11, 2016)

_____

Before WILSON and MARTIN, Circuit Judges, and RODGERS,[*] District Judge.

PER CURIAM:

The Poarch Band of Creek Indians ("Poarch Band") sued James Hildreth, Tax Assessor of Escambia County, Alabama, for declaratory and injunctive relief to prevent the assessment of property taxes on lands owned by the Poarch Band in Escambia County, Alabama, and held in trust by the United States ("Trust Property"). The Poarch Band maintains the Trust Property is exempt from taxation pursuant to the Indian Reorganization Act of 1934 ("IRA"). *See* 25 U.S.C. § 465.[1] The district court granted injunctive relief barring the tax assessment efforts during the pendency of the case, and Hildreth appeals.[2] Finding no abuse of discretion and no error of law, we affirm.

## I.

The facts are largely undisputed. On June 4, 1984, the Secretary of Indian Affairs recognized and "acknowledge[d] that the Poarch Band of Creeks . . . exists

---

[*] Honorable Margaret C. Rodgers, Chief United States District Judge for the Northern District of Florida, sitting by designation.

[1] 25 U.S.C. § 465 is part of the Indian Reorganization Act of 1934, 25 U.S.C. §§ 461-79. Section 465 authorizes the Secretary of the Interior to acquire land "for the purpose of providing land for Indians" and to hold it "in trust for the Indian tribe or individual Indians for which the land is acquired." Once entrusted to the United States, the land is "exempt from State and local taxation." § 465.

[2] We have also considered the amicus brief and oral argument of the United States offered in support of the Poarch Band.

2

as an Indian tribe within the meaning of Federal law . . . based on a determination that the group satisfies the criteria set forth in 25 C.F.R. 83.7."[3]  Final Determination for the Fed. Acknowledgment of the Poarch Band of Creeks, 49 Fed. Reg. 24,083-01 (June 11, 1984).  In making his final determination, the Secretary expressly acknowledged that "the contemporary Poarch Band of Creeks is a successor of the Creek Nation of Alabama prior to its removal to Indian Territory" and that "[t]he Creek Nation has a documented history back to 1540."[4]  Final Determination for the Fed. Acknowledgment of the Poarch Band of Creeks, 49 Fed. Reg. 24,083-01 (June 11, 1984).  Following the Secretary's determination, the United States took 229.54 acres of real property in Escambia County into trust as a reservation for the Poarch Band, *see* 50 Fed. Reg. at 15,502 (Apr. 18, 1985), and in 1992 and 1995, the Poarch Band conveyed additional land to the Secretary to be held in trust for the tribe.  According to the deeds, all of the described properties were acquired by the Secretary pursuant to that part of the IRA which

---

[3] *See* 25 C.F.R. § 83.7 (1982); 43 Fed. Reg. 39361 (Sept. 5, 1978), redesignated at 47 Fed. Reg. 13,327 (March 30, 1982).  At the time, Regulation 83.7 required, among other things, proof that the tribe had been historically identified as an American Indian tribe "on a substantially continuous basis;" that a substantial portion of the tribe lived in a community distinct from other populations and had maintained tribal political influence; and that the tribe had satisfactory tribal membership rolls. The Secretary's findings have not been previously challenged.

[4] The Poarch Band was included on the first list of Indian Entities Recognized and Eligible to Receive Services from the Bureau of Indian Affairs, which was mandated by the Federally Recognized Indian Tribe List Act of 1994, 25 U.S.C. 479a-1, *see* 60 Fed. Reg. 9250, 9253, and the tribe remains on the list today. *See* 81 Fed. Reg. 26826 (May 4, 2016).

exempts tribal lands held in trust by the United States from state and local taxation. *See* 25 U.S.C. § 465.

Hildreth was aware of the first trust conveyances at least as early as 1986, when he wrote a letter to the Alabama Attorney General inquiring as to "whether the Indian reservation property will be exempt from taxation." The Attorney General responded, "Your question is answered in the affirmative. Absent cession of jurisdiction or other federal statutes permitting it, there is no authority for state taxation of Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation," citing § 465.

In April 2012, approximately 20 years after the last conveyance at issue in this case, the Chairman of the Escambia County Commission wrote the Secretary of the Interior, asking for the Secretary's "official position" regarding whether the Trust Property had been "illegally taken into federal trust" in light of the Supreme Court's 2009 ruling in *Carcieri v. Salazar*, 555 U.S. 379, 129 S. Ct. 1058 (2009). In *Carcieri*, the Supreme Court ruled that the Secretary's authority to take tribal land into trust for the benefit of a tribe is limited to those tribes under federal jurisdiction in 1934, when the IRA was enacted.[5] *Id.* In the 2012 letter, the

---

[5] The Supreme Court reasoned that the plain language of the IRA only authorizes the Secretary to hold and provide land for "Indians" under 25 U.S.C. § 465, and that "Indian" is defined in the statute as a member of "any recognized Indian tribe *now* under Federal jurisdiction," *id.* § 479 (emphasis added)—with "now" being the date of the IRA's enactment, 1934. *Carcieri*, 555 U.S. at 387-96, 129 S. Ct. at 1064-68.

Chairman stated his position that, because the Poarch Band was not officially recognized as an Indian tribe until 1984, it was not eligible to have lands transferred into federal trust beyond the reach of state and local taxation, and therefore, the Secretary's action was unauthorized.  The Chairman thus requested that the United States relinquish any interest in the Trust Property.  In a brief response dated June 4, 2012, the Acting Assistant Secretary for the Bureau of Indian Affairs wrote, "the Department of the Interior can confirm that the land referenced in your letter was acquired in trust by the United States in 1984 and proclaimed to be a Reservation in 1985" and that the Trust Property at issue "enjoys all rights and privileges associated with being held in trust by the United States under Federal Law."

In January 2014, Hildreth informed the Poarch Band's tribal chairman that some of the Poarch Band's property in Escambia County, Alabama, had "escaped taxation," and that the Poarch Band would be subject to an audit for the purpose of valuing the property and assessing it for taxation. Hildreth demanded "a full, true, and distinct statement" describing all of the Poarch Band's lands in Escambia County, including exempt property. The Poarch Band provided an accounting of its Escambia County property *except* for the Trust Property, which Hildreth found "incomplete and non-responsive." Over a year later, by letter dated February 26, 2015, Hildreth informed the Poarch Band that his office had completed the

5

appraisal of all of its property, and he requested a meeting with the tribe. In May 2015, the Poarch Band brought suit to enjoin the taxation of the Trust Property.

The district court determined that it had jurisdiction over the suit pursuant to 28 U.S.C. § 1362, which extends federal court jurisdiction to actions brought by Indian tribes. In considering the motion for a preliminary injunction, the district court concluded that the Poarch Band is substantially likely to prevail on the merits of its claim based on the trust deeds. The district court rejected Hildreth's *Carcieri*-based argument that the Secretary impermissibly took the land into trust, distinguishing *Carcieri* on the ground that it had been brought initially as a timely Administrative Procedure Act ("APA") challenge to the Secretary's decision, *see* 5 U.S.C. § 701, et seq., unlike this case, in which the Secretary's decision had never before been the subject of an APA challenge. The district court also relied on a then-recent decision of the Middle District of Alabama that had considered a similar *Carcieri*-based argument that the Poarch Band's property was not properly taken into trust because it was a post-1934 tribe and rejected the argument as a belated challenge to the Secretary's decades-old decision in circumvention of APA procedure. *See Alabama v. PCI Gaming Auth.*, 15 F. Supp. 3d 1161, 118082 (M.D. Ala. 2014), *aff'd,* 801 F.3d 1278, 1291 (11th Cir. 2015).[6] Finding no reason to

---

[6] In *PCI Gaming*, the State had brought suit challenging the Poarch Band's commercial gaming activities under state nuisance law, in part claiming that the Poarch Band was not a properly recognized tribe in light of *Carcieri*. We subsequently affirmed the district court's

6

permit Hildreth to avoid the APA's requirements, the district court concluded that the Poarch Band had a substantial likelihood of success on the merits of its claim. Additionally, the court determined that the tax assessment would violate the Poarch Band's tribal sovereignty, constituting irreparable injury, and that this injury outweighed any "minimal" harm Hildreth would experience as the result of a delayed tax assessment if Hildreth ultimately prevailed. Finally, the district court recognized that an injunction to enforce compliance with federal law would serve the public interest. Accordingly, the district court granted the motion for preliminary injunction.

Hildreth appeals, challenging the district court's jurisdiction over the action and the grant of preliminary injunctive relief.

## II.

We have jurisdiction over the appeal pursuant to 28 U.S.C. §1292(a)(1). "The subject matter jurisdiction of the district court is a question of law, and therefore, subject to *de novo* review." *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 999 F.2d 503, 506 (11th Cir. 1993) (quoting *United States v. Perez*, 956 F.2d 1098, 1101 (11th Cir. 1992)). We review the district court's grant

---

rejection of that challenge, finding, "[t]he proper vehicle for Alabama to challenge the Secretary's decisions to take land into trust for the Tribe is an APA claim." *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1291 (11th Cir. 2015).

of a preliminary injunction for abuse of discretion, "giving no deference to the district court's legal determinations." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Reversal is warranted only if the district court applied "an incorrect legal standard," followed "improper procedures," relied on "clearly erroneous factfinding," or arrived at a conclusion that is "clearly unreasonable or incorrect." *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005)).

## III.

### A. Jurisdiction

As courts of limited jurisdiction, federal courts possess "only that power authorized by Constitution and statute." *Gunn v. Minton*, ___ U.S. ___, ___, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994)). District courts have original jurisdiction over all civil actions "brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1362. The party invoking the court's jurisdiction has the burden to make a prima facie showing that federal jurisdiction exists. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313 (11th Cir. 2009).

8

The controversy now before us undoubtedly arises under federal law—the Poarch Band is seeking to enjoin state taxation of lands held in trust for the tribe by the United States, *see* 25 U.S.C. § 465—and the Supreme Court long ago determined that the Tax Injunction Act, 28 U.S.C. § 1341,[7] does not bar a suit by an Indian tribe challenging a state tax. *See Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 472–75, 96 S. Ct. 1634, 1640-42 (1976). Despite *Moe*, Hildreth argues that the district court lacks jurisdiction because the Poarch Band was not an Indian tribe under federal jurisdiction when the IRA was enacted in 1934. Relying on *United States v. State Tax Comm'n of Miss.*, 505 F.2d 633 (5th Cir. 1974),[8] Hildreth reasons that § 479 of the IRA defines "Indian" as a member of a tribe under federal jurisdiction in 1934, and therefore, the Poarch Band cannot be considered a "duly recognized" Indian tribe for purposes of subject matter jurisdiction under § 1362. We reject this argument for several reasons.

First, § 1362's language is plain and unambiguous and authorizes a district court to exercise jurisdiction over a civil action by a tribe "duly recognized" by the

---

[7] "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

[8] We recognize all former Fifth Circuit decisions rendered prior to the close of business on September 30, 1981, as binding precedent on this court. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Secretary.  28 U.S.C. § 1362.  Construing the plain language of the statute according to its common and ordinary meaning, "duly" means simply "[i]n a proper manner; in accordance with legal requirements."  *Duly,* Black's Law Dictionary (10th ed. 2014); *see also Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1228 (11th Cir. 2005) (relying on Webster's dictionary definition of "duly" as meaning "in a due manner, time, and degree" in a Florida insurance case).  There is no indication in the record that the Secretary failed to properly follow established procedures for taking the land into trust, and, in any event, as discussed below, any such assertion is long overdue.  To the contrary, the record reflects that the Secretary took the Poarch Band's property into trust after finding the then-existing regulatory criteria implementing § 465 were satisfied and that the deeds, which were properly executed in the 1980s and 1990s, effectively conveyed title to the United States for the benefit of the Poarch Band.  The record thus contains sufficient evidence to show that the Poarch Band was "duly recognized" by the Secretary within the meaning of § 1362 well before this suit was filed.

Additionally, we stand by the "eminently sound and vital canon" that statutes benefitting Indian tribes "are to be liberally construed," with any doubts resolved in favor of the Indians.  *Bryan v. Itasca Cty.*, 426 U.S. 373, 392, 96 S. Ct. 2102, 2112 (1976) (quoting *N. Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 655

10

n. 7, 96 S. Ct. 1793, 1797 (1976) and *Alaska Pac. Fisheries v. United States*, 248 U.S. 78, 89, 39 S. Ct. 40, 42 (1918)).  Looking at § 1362, there is nothing to suggest that "duly recognized" was intended to be read narrowly or synonymously with "under Federal jurisdiction in 1934," as used in § 479 of the IRA.[9] Congress's intent in enacting § 1362, which we note was enacted 32 years after the IRA, was to broaden judicial access for Indians.[10]  *See Moe*, 425 U.S. at 473–74, 96 S. Ct. at 1641.  If Congress had intended § 1362 to narrowly apply only to those Indian tribes recognized in 1934, it could have stated this intention expressly in the statute or clarified it by statute after *Carcieri,* neither of which it has done. *See Santiago–Lugo v. Warden*, 785 F.3d 467, 474 (11th Cir. 2015) (stating "Congress knows how to limit courts' subject matter jurisdiction  . . . when it wishes to do so").

Second, Hildreth's reliance on *State Tax Commission of Mississippi* is misplaced.  In that case, jurisdiction was challenged in the context of a suit brought

---

[9] It is also instructive that a 1994 amendment to the IRA defines "Indian tribe" broadly as "any Indian or Alaska Native tribe, band, nation, pueblo, village or community *that the Secretary of the Interior acknowledges to exist as an Indian tribe*." 25 U.S.C. § 479a(2) (emphasis added). There is no question that the Secretary acknowledged the Poarch Band's existence as an Indian tribe in 1984, long before this suit was filed.

[10] Legislative history reflects that the purpose of § 1362 was to permit Indians to sue without regard to the then-existing amount-in-controversy limit on federal-question jurisdiction and to codify the practice of allowing Indian tribes to sue for relief from state and local taxes to the same extent as the United States. *See* H.R. Rep. 89-2040 (1966), *reprinted in* U.S.C.C.A.N. 3145, 1966 WL 4399.

by the United States to prevent the state's taxation of a private corporation, which had been formed by the Mississippi Band of Choctaw Indians. The former Fifth Circuit rejected the two jurisdictional grounds asserted by the United States, *see* 28 U.S.C. §§ 1345 and 1362, finding first that § 1345, which provides original jurisdiction over suits brought by the United States, did not confer jurisdiction because the private corporation was the real party-plaintiff in interest, not the United States. *See State Tax Comm'n of Miss.*, 505 F.2d at 638. Regarding § 1362, the court similarly concluded that it did not confer jurisdiction over the suit because the private corporation was not an Indian tribe and the statute plainly applies only to Indian tribes. In the end, the court found that the suit was barred by the Tax Injunction Act, 28 U.S.C. § 1341.[11] *See id.* Although this holding was dispositive of the appeal, the court nonetheless continued in its opinion, offering a lengthy recitation of the history of the Choctaw Indians in Mississippi to show that they did not have tribal status in 1934 and thus were not an Indian tribe, as defined in the IRA. *See id.* at 638–42. Based on this factual determination, the court concluded *alternatively* that even "if we are mistaken in our first holding that the United States is not a real party in interest . . . the result is the same" (i.e., the district court lacked jurisdiction). *See id.* at 643.

---

[11] "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

It is this alternative "holding" in *State Tax Commission of Mississippi* that

Hildreth insists is binding authority for our interpretation of § 1362, compelling a

conclusion that the phrase "Indian tribe … duly recognized by the Secretary" is

limited by the definition of "Indian" under § 479 of the IRA.  According to

Hildreth, this is fatal to the district court's jurisdiction in this case because the

Poarch Band was not officially recognized as a tribe under federal jurisdiction in

1934.  We disagree. The portion of *State Tax Commission of Mississippi* on which

Hildreth so heavily relies is not binding precedent for two reasons.  First, although

we refer to this portion of the case loosely as an alternate "holding," it is not on

equal footing with the actual holding in the case because it could apply only in the

unlikely event the court was mistaken in its findings regarding the real party in

interest.[12]  The former Fifth Circuit's superfluous discussion about the origins of

the Choctaw tribe, on whose behalf the United States purported to bring the suit,

was not in any way necessary to the court's decision in the case, which rested

---

[12] While we are bound by prior panel precedent, *see, e.g.*, *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001), including precedent of the former Fifth Circuit, *see Bonner* at 1209 –10, we are not required to follow prior panel dicta that is unnecessary to the decision. *See McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996); *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992); *see generally United States v. Hunter*, 172 F.3d 1307, 1310 (11th Cir. 1999) ("But while the prior [panel] precedent rule requires us to follow the holding of an earlier decision, it does not require us to follow the language of the accompanying opinion *that is unnecessary to the decision*, i.e., we are not required to follow dicta.") (Carnes, J., concurring) (emphasis added).  In this instance, *State Tax Commission of Mississippi* provided an alternate conclusion that could stand as an additional ground for the decision *only* if we assume facts different from those supporting the first holding, that is, that the private corporation in fact was not the real party in interest.

13

squarely on the fact that there was no jurisdiction for a *private corporation* seeking to evade a state tax. Thus, we view the alternate "holding" in *State Tax Commission of Mississippi* as more akin to dicta than binding precedent on the jurisdictional issue presented here. Second, any precedential value in the court's alternative "holding" that the Choctaws did not have tribal status in 1934 and therefore were not covered by the IRA was subsequently eroded by the Supreme Court in *United States v. John*, 437 U.S. 634, 98 S. Ct. 2541 (1978). In *John,* decided four years after *State Tax Commission of Mississippi*, the Supreme Court surveyed the history of the Choctaw tribe in the context of determining whether there was federal jurisdiction to prosecute a criminal offense committed on the Choctaw reservation in Mississippi. The Supreme Court acknowledged that the lower courts had relied on *State Tax Commission of Mississippi* to find that the United States had no authority to prosecute the offense as having been committed in "Indian Country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153, because the Choctaw tribe was not under federal jurisdiction at the time the IRA was passed in 1934, having lost its tribal status in 1830. The Court expressly disagreed and found instead that the IRA did apply to the Choctaw Indians, who had never lost their tribal status, and thus there was federal jurisdiction to prosecute.[13] *See John,* 437 U.S. at 650, 98 S. Ct. at 1249. Although the Supreme

_____

[13] The Supreme Court recognized that the Choctaws had inhabited large areas of land in

14

Court did not directly comment in *John* on the former Fifth Circuit's § 1362 jurisdictional analysis, *John's* conclusion regarding the Choctaw's 1934 tribal status completely undermines the factual assumptions supporting the court's alternate "holding" in *State Tax Commission of Mississippi*.  For these reasons, we do not consider the alternate "holding" binding on us.[14]

In sum, we find it unnecessary to resolve Hildreth's challenge to the Secretary's 1984 administrative decision to recognize the Poarch Band as an Indian tribe in order to decide that the district court has jurisdiction over this tax controversy.[15]  We conclude on the record before us that the Poarch Band was duly

what is now Mississippi since before the American Revolution.  *See John*, 437 U.S. at 638, 98 S. Ct. at 2543.

[14] *Carcieri*, which is binding precedent, held that a tribe's status as of 1934 was crucial to the Secretary's exercise of his authority to take tribal lands into trust on behalf of the United States pursuant to § 465.  The jurisdictional question presented in that case, however, related to the Secretary's authority to take tribal land into trust, not to whether an Indian tribe could bring suit in federal court to enjoin a tax assessment.  Because the Supreme Court did not discuss § 1362 jurisdiction at all or the interplay, if any, between § 1362 and the IRA, *Carcieri* does not control our decision on the jurisdictional question in this case.

[15] Hildreth's defense that the Secretary acted without authority in recognizing the tribe in 1985, to the extent it even could be raised in this untimely manner, is intertwined with the merits and does not deprive the district court of jurisdiction to decide the dispute.  When a defendant's jurisdictional challenge implicates an element of the cause of action, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S. Ct. 396 (1981)).  We cannot help but note, however, that on the record before us, Hildreth's defense appears to be foreclosed but we leave that decision in the first instance to the district court.

recognized by the Secretary as an Indian tribe within the meaning of § 1362 at the time this suit was brought.

## B.    Preliminary Injunction

Injunctive relief may be granted on a showing that the moving party "(1) has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).  No evidentiary hearing is necessary "where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought."  *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998).

We first conclude that the district court did not abuse its discretion by not holding an evidentiary hearing.  Although Hildreth disputed the tribe's 1934 status, he concedes that the Secretary conveyed the Trust Property in 1984 and he has not before challenged that decision under the APA. Thus, no material facts necessary to the legal determination on which the district court based its decision were in dispute, and no evidentiary hearing was required.  *See id.*

Hildreth's arguments against the Poarch Band's likelihood of success on the merits overlap with his jurisdictional challenge and stem from his belated

16

contention that the tribe's claim to a § 465 tax exemption fails due to its post-1934 recognition as a tribe.  Again, relying on *Carcieri*, Hildreth argues that the Secretary lacked authority to acquire the Trust Property under § 465 for an Indian tribe not "under Federal jurisdiction" in 1934, and therefore, the Poarch Band lacks standing and fails to state a claim for tax exemption under § 465.

In *Carcieri*, the Supreme Court concluded that the Secretary's authority to take property into trust turned on whether the tribe had been a "recognized Indian Tribe" in 1934. *See* 555 U.S. at 387–91, 129 S. Ct. at 1063–65.  The Court's conclusion was based on a plain language analysis of § 479 and § 465 of the IRA in the context of a timely APA challenge.  The district court in this case correctly distinguished *Carcieri* as a case involving a direct and timely APA challenge.  As noted previously, *see supra*, n.6, and accompanying text, after the district court entered its order in this case, we drew the same distinction.  *See PCI Gaming*, 801 F.3d at 1290–91.  In *PCI Gaming,* we held that the "proper vehicle" for challenging the Secretary's authority to take tribal lands into trust is a timely APA claim pursuant to 5 U.S.C. § 702, not a collateral challenge to a long-ago decision of the Secretary.  801 F.3d at 1290–91,; *see also Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, ___U.S.___, ___,132 S. Ct. 2199, 2208 (2012) (characterizing a challenge to the Secretary's authority to take property into trust as a "garden variety" APA claim); *Big Lagoon Rancheria v. California*, 789 F.3d

17

947, 952–53 (9th Cir. 2015) (en banc) (rejecting a *Carcieri*-based argument that was raised outside the APA context and concluding that to allow a belated collateral attack would circumvent the APA's statute of limitations).  At the time the district court issued the preliminary injunction in this case, Hildreth had no APA claim pending against the Secretary; it was undisputed that the Secretary recognized the Poarch Band in 1984 and placed its property in trust beginning in 1985, approximately 30 years before this suit was filed; and, as reflected in the record, Hildreth was aware of the Secretary's actions as early as 1986.[16]  We squarely rejected this type of collateral challenge to the Secretary's decades-old decision as procedurally improper in *PCI Gaming*, 801 F.3d at 1291 ("We hold that Alabama cannot raise in this lawsuit a collateral challenge to the Secretary's authority to take the lands at issue into trust.").  The district court did not abuse its discretion in determining that the Poarch Band has a strong likelihood of success against Hildreth's defenses.

Hildreth argues that the Secretary's ultra vires decision to take the land into trust constitutes a valid exception to the APA limitations period.  We rejected the

---

[16] We note that the posture of this case has shifted significantly in the district court since Hildreth noticed this interlocutory appeal. Hildreth has amended his answer, adding counterclaims and joining the Secretary of the Interior, among other federal defendants. The counterclaims include an APA challenge to the Secretary's land-in-trust decisions and a corresponding request for a declaratory judgment that the Trust Property does not enjoy § 465 protection. Nevertheless, for purposes of this appeal, we consider only the posture of the case when the preliminary injunction was issued.  Any subsequent proceedings in the district court are beyond the scope of this appeal and will not be addressed.

18

same argument on similar facts in *PCI Gaming,* refusing to "carve out an exception to the six-year statute of limitations" where it was clear that the State of Alabama knew of the Secretary's action and could have brought a timely APA challenge. 801 F.3d at 1292. The record in this case similarly reflects that Hildreth, like the State of Alabama in *PCI Gaming,* was well aware of the Secretary's decision to take the Poarch Band's property into trust close in time to the decision—he made a written inquiry of the Secretary in 1986 regarding the effect of the conveyance. To recognize an exception and permit a collateral challenge nearly 30 years later, where the record clearly reflects that Hildreth could have raised a timely challenge but did not, would turn *PCI Gaming* on its head.

The district court also did not abuse its discretion in weighing the balance of harms. We are satisfied that a state tax assessment would amount to irreparable violation of tribal sovereignty. *See Ute Indian Tribe of Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1005–07 (10th Cir. 2015) (invasion of tribal sovereignty constitutes irreparable injury). This harm outweighs any potential temporary harm to Escambia County that would result from a delayed tax assessment. *See Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1256 (10th Cir. 2006) (harm of invasion of sovereignty outweighs harm of delayed enforcement of gaming laws). Also, it is reasonable to conclude that enforcing the existing federal

statutory and regulatory structure applicable to Indian tribes would serve the public interest.

## IV.

Having found that the district court has subject matter jurisdiction over this civil action and that the district court did not abuse its discretion in granting the preliminary injunction, the district court's decision is **AFFIRMED.**